IRELAND *against* THE OSWEGO, HANNIBAL and STERLING PLANK ROAD COMPANY.

Although a plank road company has acquired, pursuant to the statute (*Laws of* 1847, *p.* 223, § 26), the right to construct its road upon a highway, the public may lawfully continue to travel thereon while the company is building the plank road.

The rights and duties of the company towards the public, during the construction of the plank road on the site of the highway, are similar to those of commissioners or overseers when repairing highways.

The company is bound, while engaged in constructing the plank road, to exercise reasonable care and diligence to render the ordinary public travel on the former highway convenient and safe; and if, by the negligence of the company, the road is rendered unsafe, and a traveler exercising ordinary care sustains damage, the company is responsible.

THE action was brought to recover damages for the negligence of the defendant in constructing its road in such a manner that the plaintiff, in driving upon it with his horses and wagon, was thrown out and injured. The trial took

place before Mr. Justice Pratt and a jury, at the Oswego county circuit, in February, 1852. It appeared that the defendant was a plank road company, incorporated under the general act, and that it had duly acquired the right to use the public highway leading from the city of Oswego to the town of Sterling for the construction of its road, and had located the plank road thereon. In grading for the plank road, the defendant had, within the bounds of the former highway, excavated the earth so as to make a new track lower than the former traveled path of the highway. This new track, in running from Oswego towards Sterling, diverged, near the place where the accident occurred, from the traveled pathway of the former highway. The two tracks were on a level at the place where they separated, and each was of sufficient width at that place to admit of traveling with a carriage; but the old pathway gradually became higher than the new track, and grew narrower until it came to a point, at a place where it was elevated from two to three feet above the new track constructed by the defendant. It was near this point that the plaintiff was injured. There was a place, between the point where the tracks diverged and where the accident occurred, at which the descent from the old to the new was safer than where the old one ended or where the plaintiff was injured. Planks had not yet been laid upon the new track. The plaintiff lived in Sterling, and had been at Oswego with a load of hay. While returning, in the evening, he was thrown from his wagon and injured in his spine so as to disable him for life. He was traveling alone; and the evidence as to the manner of the accident consisted principally in a description of the position in which he and the wagon and horses were found, and the tracks made by the latter. The evidence tended to show that the plaintiff was sitting on one side of his hay rack, driving his team, and that he took the old track at the point where it separated from the new, and proceeded

along it to near the point where it ended, where he was thrown from the wagon by means of the descent from the old track to the new, as the team was descending from the former to the latter.

The defendant's counsel moved for a nonsuit, insisting that the defendant was entitled to the exclusive possession of the highway while in the course of constructing its plank road, and that the plaintiff was wrongfully there; but that if this were not so, the defendant was not in fault; that it had fulfilled its duty by constructing one suitable track, and if travelers were injured by driving off from it, the defendant was not responsible; and, finally, that it was incumbent on the plaintiff to show that he had used due care in driving, which, as was claimed, he had failed to do. The justice denied the motion, and the defendant's counsel excepted.

At the close of the evidence the justice charged the jury that the defendant had a right to occupy the highway for the purpose of grading it and laying down its planks, but that the law did not contemplate an entire suspension of the travel; that the defendant was bound to exercise reasonable care in its work, so as to leave the road passable and safe for travelers; and that the liability of the defendant in cases like this was similar to that of town commissioners and overseers in making repairs upon the highways; that if the company had constructed a suitable pathway, and travelers turned off for the purpose of getting a harder track, it was at their own risk; that the defendant would be liable only in case it left the old road in a condition calculated to mislead persons of ordinary care; that to make the company liable it must appear that it had left the road in such a situation that travelers in the night would not be likely to notice its condition, and would be led to keep on the old track until they should go off the embankment. He further instructed the jury, in allusion apparently to some argument which had been advanced by counsel, that if

the defendant had made and left the road safe it would not be liable on account of any change made by the teams of travelers, at the point where the paths separated, by driving into the old path and causing it to appear as though that was the proper traveled path, so that subsequent travelers and the plaintiff were misled. The charge thus far was not excepted to; but the judge added that it had been suggested that a driver would leave it to his horses to pick out the road in the dark; and he observed that old horses were more likely to keep the road than young ones; that where the road had been altered the horses would be likely to take the old road; and he added: "It is for you to say whether it would be proper to let the horses take their own course." To this the defendant's counsel excepted. The judge was then requested to charge the affirmative of several propositions, viz: (1.) That the defendant was entitled to the exclusive possession of the road, as had been claimed on the motion for a nonsuit; (2.) That the plaintiff was in fault in traveling over the road in the night while it was in the course of construction; (3.) That the plaintiff was guilty of negligence in riding in the position which he did in the wagon; (4.) That the defendant had no right to put up an obstruction to keep travelers from taking the old path (it having been argued that the defendant should have put up a fence to keep teams from the old track if it was dangerous); (5.) That if the jury should find that the defendant had provided one suitable pathway it was not liable; (6.) That if the plaintiff went upon the old track for his own convenience, or the horses took it by instinct, the defendant was not liable; (7.) That the plaintiff was bound under the circumstances to use extraordinary care. In respect to the last proposition, the judge stated that the plaintiff was bound to use reasonable care. As to the sixth proposition, he referred to what he had already charged, and declined to charge further as to that position; and he declined to charge as requested by the other propo-

sitions.   The defendant's counsel excepted in each instance to the refusal to charge as desired.   The jury found a verdict for the plaintiff for $1500, and the judgment entered thereon was affirmed at a general term in the 5th district. The defendant appealed.

*J. H. Reynolds*, for the appellant.

*L. Tremaine*, for the respondent.

DENIO, C. J.   Plank road companies are authorized, by the statute providing for their incorporation, to use the public highways of the state for the location and construction of their roads, upon obtaining the consent of certain town officers, or upon an appraisement by a jury in case the town authorities will not consent, for which use they are to pay such compensation as shall be fixed upon by the agreement or the appraisement. (*Laws of* 1847, 223, § 26.) The act of changing a highway into a plank road would not ordinarily require that all travel should be prohibited while the change was making, or that the company should have the exclusive right of occupation during that period. What is done in such cases is in the nature of repairing and improving the existing road, and the interruption of the ordinary travel, if any, would be more or less according to the circumstances and condition of the road in the particular case.   It was not, in my opinion, contemplated that a plank road company should take possession of a highway, and exclude the public from it while their work was going on.   Any inconvenience necessarily arising to the public would have to be submitted to, and it would be the duty of the company to render that inconvenience as inconsiderable as would be reasonably practicable.   The expression in the 28th section of the act authorizing these companies to "take and hold" the lands which have been appraised refers, I think, to lands not before used as highways; but

if it includes also the highways, the right to use which they have acquired, it does not give the right to an exclusive use, but only a use for the "purposes of such a road." The true rule, in my opinion, was laid down at the circuit, where the duty of the company was assimilated to that of town officers when engaged in repairing the highways.

It is unquestionably true that neither the highway officers of the towns, or the directors of plank road companies, are required to grade the whole space within the limits of the highway, so that a traveler can safely drive his carriage over every part of it. In ordinary cases, if they provide a pathway for carriages of suitable width, and so define it as that there shall be no reasonable danger of its being mistaken, they will not be in fault if a traveler chooses to try an experiment upon the part which is not thus prepared for traveling. The cases referred to from the courts in New England appear to me to lay down a reasonable rule in this respect, which I should not hesitate to adopt in a case requiring its application. (*Johnson* v. *Whitfield*, 6 *Shepley*, 286 ; *Packard* v. *Packard*, 16 *Pick.*, 191 ; *Shepardson* v. *The Inhabitants of Colerain*, 13 *Metc.*, 55 ; *Rice* v. *The Town of Montpelier*, 19 *Verm.*, 470.) The defendant had the full benefit of this rule in that part of the charge in which the jury were told that if the company had constructed a suitable pathway, and travelers chose to turn off from it, it was at their own risk. The complaint in this case was, that the defendant had left the road in such a condition, at the place where the newly graded track diverged from the path formerly traveled, as would be likely to mislead persons of ordinary prudence and caution, and induce them to take the old and unsafe instead of the new and safe course. The jury were distinctly told that the plaintiff could not recover, unless they found such a state of facts. I do not understand it to have been denied on the argument but that the defendants

would be liable in the case supposed, and I do not entertain any doubt as to their responsibility in such a case. Where a road is so constructed or altered as to present at one point two paths, both of which exhibit the appearance of having been used by travelers, and one of them leads to a dangerous precipice, while the other is quite safe, it is the duty of those having charge of the road to indicate, in a manner not to be mistaken by day or by night, that the unsafe path is to be avoided; and, if it cannot be otherwise done, to put up such an obstruction as will turn the traveler from the wrong track.

What I have said disposes of several of the requests for instructions to be given to the jury. I do not think they should have been charged that the plaintiff was guilty of a fault in returning from a market town in the evening. It was, no doubt, his duty to use such caution as the peculiarity of the road and the time of day required of a prudent man; and the jury were so instructed in that part of the charge in which the judge responded to the request to charge that extraordinary care was required of him. He said the defendant was bound to use reasonable care and prudence. Again, the defendants were not entitled to have the jury instructed according to the fifth proposition, without the qualification that they had not left the road in a condition to mislead travelers, and with that qualification the instruction was given in the charge; and the same remark is applicable to the sixth proposition. The observation respecting the instinct of horses in taking an old traveled road, when there had been a change in the track, does not raise any question of law, but seems to me to have been a proper comment upon the facts.

Upon the whole, the case seems to me to have been tried with legal discrimination on the part of the judge; and if the defendants have had a hard measure dealt out to them (as to which I give no opinion), it was the fault of the

jury in determining the facts, and not of the judge in lay ing down the law.·

The judgment should be. affirmed.

T. A. JOHNSON, J. The justice at the circuit was clearly right in refusing to nonsuit the plaintiff, and permitting the cause to go to the jury.

It by no means necessarily follows, because there is no conflict in the testimony, that the court is to decide the issue between the parties as a question of law. The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the considera tion of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact from several facts and circumstances dis closed by the testimony, after their connection and relation to the matter in issue have been traced and their weight and force considered. In such cases the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements or there be but one statement which is consistent throughout. Presumptions of fact, from their very nature, are not strictly objects of ,egal science, like presumptions of law.[1] That the care exercised by the plaintiff at the time of the injury, and the negligence of the defendant, were both questions for the jury to determine, cannot admit of any doubt.

It is not true, I apprehend, as claimed by the defendant's counsel, that a corporation of this description, when it has taken all the steps necessary to authorize it to use a com mon highway for its plank road, acquires the same exclusive right to the land over which such highway passes, and·to its use and occupation while engaged in constructing its road, that it does to the lands of individuals acquired for

---

[1] See *Stackus* v. *New York Central Railroad Co.*, 79 N. Y. 464, 469. *Hart* v *Hudson River Bridge Co.*, 80 Ibid. 622. *Ochsenbern* v. *Shapley*, 85 Ibid. 224.

3 KERN.—34

the same purpose. It can acquire no greater right in the highway than the public possesses, which is a mere easement, and that not for the purpose of excluding the public or interrupting their enjoyment of the way, but for the purpose of aiding and facilitating travel and the transportation of property.

As a necessary incident, the corporation acquires the right to grade its track by excavation and embankment, if necessary, and to take the necessary possession to enable it to do so, and to lay down and secure the plank. Still its right is not exclusive until the road is finished, and until that is done the public have the right of free passage, and the corporation is bound so to exercise its rights as not unnecessarily to interfere with this right of the public. During this time the rights and duties of the corporation towards the public are analogous to those of public officers repairing streets and highways. While exercising its own rights it owes a duty to the public also, and has no right to place and continue dangerous obstructions in parts of the highway where persons of ordinary prudence do or will be likely to travel, without some guard or notice to warn them of their danger; and this results, I think, from the nature of the right acquired, the uses for which it is intended and the necessities of the case.

The plaintiff was, therefore, lawfully there, and was required to exercise ordinary care and prudence only, according to the condition and circumstances in which he was placed.

Such being the relative rights and duties of the parties there was no error in the charge of the judge to the jury nor in the refusal to charge as requested.

The law was correctly laid down and the facts properly submitted, nor is the verdict without evidence to support it. The judgment must therefore be affirmed.

Judgment affirmed.