```
·55  413|
 61  590|
     55  413|
    111  424|
```

## Silas W. Goodale v. The Portage Lake Bridge Co.

*Draw-bridge—Personal injury—Fitness of bridge-tender.*

1. The weight of relevant evidence is for the jury.

2. A case can only be taken from the jury when there is an entire want of evidence upon some material point in it.

3. An incorporated draw-bridge company that collects toll, and has the exclusive management of the bridge, is liable for any injury that may result from its neglect to furnish reasonable safeguards to persons lawfully on the bridge when the draw is open, and who are themselves exercising ordinary care and prudence.

4. The nature of a personal injury in respect to being permanent or temporary, may be shown under the general issue in an action of case therefor.

5. One who sued a draw-bridge company for the injury caused him by falling in the night into the gap while the draw was open, and who alleged that defendant negligently left it so without any protection against the opening, is entitled to show the situation and circumstances at the time of the accident, including the number of men in charge of the bridge, and the fact that during the month when it happened there was no bar or gate, or anything put up by the company when the draw was open.

6. In an action against a bridge company for an injury caused by leaving the draw open, the plaintiff averred that defendant had employed an incompetent person and put him in charge of the bridge and the

draw. *Held* proper to show that the person who employed the bridge tender had known, before he did so, that the latter had been deranged; and that conversations held by the employer with other persons, from which this fact appeared, were relevant for that purpose.

7. Suit was brought against a bridge company by a man who fell into the draw in the night. *Held* proper to show that a bull's-eye head-light, so placed as to illuminate the toll-house, did not shine so as to show the opening when the bridge was drawn; *also*, that while expert testimony as to how it should have been placed to do so, was not admissible, its reception was harmless error.

Error to Houghton. (Steere, J.) Oct. 8.—Jan. 7.

CASE. Defendant brings error. Affirmed.

*T. L. Chadbourne, Alexis C. Angell* and *Ashley Pond* for appellants.

*Chandler & Grant* for appellees, as to the bridge company's obligation to keep its bridge safe, cited *Stratton v Staples* 59 Me., 94; *Voak v. N. C. Railway Co.* 75 N. Y. 320 *Weed v. Ballston Spa* 76 N. Y. 329; *Nowell v. Wright* 3 Allen 166; *Manley v. R. R.* 2 H. & N. 840; Whart. on Neg. 274; *Grayville v. Whitaker* 85 Ill. 439; *Kavanaugh v. Janesville* 24 Wis. 618.

CHAMPLIN, J. The plaintiff sued the defendant in an action of tort. The declaration sets forth that plaintiff, on the 13th day of July, 1882, at about half-past ten o'clock P. M., while passing over the bridge of the defendant, fell through the open draw ; that the plaintiff was in the exercise of due care and diligence. The grounds of negligence are that the defendant " negligently, carelessly and recklessly left said draw open, without any protection against the opening thus left ;" that it " carelessly, negligently, and recklessly neglected to give any signal, notice or warning to said plaintiff that said draw was open ;" that it " negligently, carelessly and recklessly placed on the east side of said bridge, and directly opposite its toll-house, what is known as a bull's-head-light, which reflected a bright light directly into the toll-house on said bridge ; that said light did not shine into or show said opening, but concealed the same from the plain-

tiff; that the light from said lamp so dazzled plaintiff's eyes that he could not see said opening (said light rendering it impossible to see the opening as he approached the same); and that the employee of the defendant, who was placed in charge of the bridge and draw, was incompetent to perform the duties incident thereto, and unfit to be employed in and about said business, which incompetency and unfitness were known to the defendant at and prior to that time." The declaration further alleges that the injuries plaintiff sustained by said fall were caused by these acts of carelessness, negligence and recklessness.

The plea was the general issue. The cause was tried before a jury, who rendered a verdict in favor of the plaintiff for $500. The bridge of the defendant is built across Portage Lake, between the villages of Houghton and Hancock, the distance between said villages being from three-quarters of a mile to a mile, the length of the bridge being about 1300 feet. From the Houghton side of the lake to the draw it is 558 feet. The length of the turn-table or draw is 180 feet. The width of passage-way for boats through the draw is about 70 feet. A sidewalk extends across the bridge on its westerly side. Near the sidewalk and the south end of the draw is a small building used as a toll-house. The toll window is six feet six inches and the north edge of the house four feet six inches, south of the edge of the draw. Nine feet eight inches south of the edge, on a line with the railing and on the east side of the bridge, was a head-light with a reflector so placed as to throw light upon the front of the toll-house and upon the planking north of it.

Whether this head-light was so located as to throw the rays of light upon the draw of the bridge when closed or not was a question upon which the testimony differed. The plaintiff's testimony tended to prove that, on the night of the accident, the rays of light from this source did not fall so as to disclose any chasm or opening in the bridge. It appears that the other lamp-lights were placed on posts near the end of the draw and about seven feet above the floor of the bridge, but were so dim as to give but little light upon the bridge; the

one on the west side of the bridge being behind the toll-house, so it could not be seen by a passenger approaching from the Houghton side. There were two lights placed, one on each side of the draw, so as to show up and down the lake when the draw was open. These lights, the bridge-tender himself testified, were of but little, if any, use to travelers over the bridge. The company commenced to do business in 1876, and this bull's head-light was placed there in the spring of 1882.

At about ten o'clock p. m., July 13, 1882, plaintiff in company with Judge Williams, of Marquette, left Houghton to go to Hancock to take a steamer, and attempted to pass over this bridge. They were walking abreast upon the sidewalk, the judge on plaintiff's left, and next the outside rail. Plaintiff had a valise in his hand. The night, was dark. As they came to the toll-house they did not stop, but the judge fell a step behind and placed some bridge tickets on the toll-house counter. As the judge turned away from the counter he saw a man standing near the westerly rail of the bridge and the edge of the draw. Plaintiff was then a step ahead of Judge Williams, who heard the man say, "Take care!" Instantly the judge said, "Look out!" Plaintiff then swung a little to his right, and went over the edge of the draw. He struck on some timbers a few feet down, and sprained his ankle and lost his valise. When he stepped off plaintiff was walking about three miles an hour. The draw was open to allow some vessels to pass through. It appears that the duty of toll-gatherer and of bridge-tender were performed by the same person, and that no one was in the toll-house at the time the checks were laid upon the counter.

The negligence of the defendant is alleged as consisting of

1. In leaving the draw open without any protection against the opening thus left.

2. In neglecting to give any signal, notice or warning that the draw was open.

3. In placing a head-light so that it did not show the opening.

4. In placing it so that it dazzled the eyes of travelers and prevented them from seeing the opening.

5. In employing knowingly an incompetent bridge-tender.

The appellant claims that the judgment is erroneous because.

1. No relevant evidence was introduced as to the first, second, fourth and fifth grounds of negligence counted on.

2. The plaintiff was negligent.

3. Irrelevant evidence was introduced as to the permanence of plaintiff's injury.

4. Relevant evidence offered by defendant was excluded.

The first and second grounds of error relied on we do not think are sustained by the record. The evidence introduced in the case was relevant, and tended to prove the negligence alleged in the declaration, and that the plaintiff was in the exercise of due care and caution. The weight of this evidence was for the jury, and was submitted to them under proper instructions from the court. It is only when there is an entire want of evidence upon some material point in the case that the court is warranted in taking the case from the jury. We do not perceive that such was the case here, and the court committed no error in refusing to charge the request made by defendant that the plaintiff has made out no case, and directing them to find a verdict for defendant. We have examined the charge to the jury as given by the court, and the principles of law applicable to the facts of the case appear to have been correctly stated and properly submitted to the jury, and we are also of opinion that the refusals of the court to charge as requested by the defendant's counsel, considered in connection with the charge given, constituted no error to the injury of defendant.

The defendant was incorporated under the laws of the State of Michigan. By the act of incorporation valuable franchises are conferred upon it. It has erected a bridge across the navigable waters of the State, and charges and receives toll from all persons passing over it. With reference to the management of the bridge and the opening of the draw, and all precautionary measures in relation thereto,

the defendant had exclusive control and direction. In its use the defendant was required, by its relation to the public and those traveling over its bridge, to exercise due regard and caution for their safety, and to use reasonable safeguards for their protection, and for omitting to discharge its duty in this respect the defendant may be held responsible for any injury occasioned thereby. In this, as in all actions for negligence, the plaintiff must show that he was in the exercise of ordinary care and prudence on his part, and if he fails to do so he cannot hold the defendant liable. This being shown, the defendant was bound to use reasonable care in reference to the safety of travelers passing over and upon the bridge while the draw was open, and for any negligence in this respect it would be liable to any person injured solely through such negligence. *Manley v. St. Helen's Canal Co.* 2 H. & N. 840; *Nowell v. Wright* 3 Allen 166.

There was no error in permitting the witnesses to testify with reference to the nature of the injury to plaintiff's limb —whether the injury was permanent or temporary : the real nature thereof could be shown under the issue. The plaintiff was asked : " How many were in charge of the bridge at that time ?" He was permitted to answer, against defendant's objection, and the defendant now assigns error upon the ruling. The question was proper. The plaintiff was entitled to show the situation and the surrounding circumstances at the time of the accident, and for this reason it was proper also to show that during the month of July, 1882, there was no bar or gate or anything put up there by the bridge company when the draw was open. It was also admissible as bearing upon the question of negligence. The declaration alleges the defendant "negligently, carelessly and recklessly left said draw open without any protection against the opening thus left." This averment is sufficiently certain to admit the testimony objected to being given in evidence.

The declaration averred that the defendant employed an incompetent person, and placed him in charge of the bridge and draw ; and on the trial evidence was introduced which tended to show that a short time previously this employee

had been temporarily insane, and that the officer or agent of defendant who employed him knew such fact.   It is claimed that, whether or not it would have been proper to show that Sheldon, who was the person who employed the bridge-tender early in 1882, knew [from conversations had with other persons] that in the winter of 1881–82 the person he employed had been temporarily deranged on religious subjects, what was said to him had no tendency to show that in July, 1882, he was unfit to be bridge-tender, or that Sheldon had notice that in July he was incompetent.   The object of showing these conversations with Sheldon was to prove that he knew before he employed this person to attend the bridge that he had been deranged.   The fact that he had been deranged so that he was not reliable was made to appear by other witnesses.   The declaration put the unfitness of the bridge-tender in issue, and the testimony introduced was relevant upon that issue.

The testimony of the witness Robinson as to the effect of the bull's head-light shining upon the bridge, and the inability of a person to perceive when the draw was open from the light in that position, we think was proper.   The witness also testified that the position of the light, in order to disclose the chasm, should have been below, so that the reflection would be against the coamings of the bridge where the chasm commences, and would show the opening.   We do not think this expert testimony was admissible.   We do not see, however, that its reception could in any way prejudice the defendant before the jury.   The witness had testified that the light, as placed, did not disclose the opening when the bridge was drawn, which was a proper and material point to be shown, and speculation how it might have been placed to produce a better effect, while immaterial, was harmless.   The verdict of the jury, under the instructions of the court, could not at all have been influenced by this testimony.   No error appearing in the record,

The judgment is affirmed.

The other Justices concurred.