ABEL K. CROSBY v. THE DETROIT, GRAND HAVEN & MIL-
WAUKEE RAILWAY COMPANY.

*Railroad Companies—Negligence in maintaining fences.*

1. A railroad company must be as watchful to keep its fences in repair as
any prudent person would be in maintaining fences to protect his
own property.

2. Negligence may sometimes be inferred from all the evidence taken
together, even though the only direct evidence on the subject tends
to negative it; and wherever the facts might support different infer-
ences, it is a question for a jury.

3. Track repairers found at the close of the day that several rods of rail-
way fencing, enclosing pasture land, had been burned, but they put
off mending it until morning. Meanwhile a horse got upon the
track during the night and was killed by a passing train. *Held*, that
in an action against the company for the injury it was for the jury to
say, in view of all the circumstances, whether defendant was negli-
gent.

Error to Oakland.    (Stickney, J.)    Oct. 23..—Nov. 19.

CASE.    Defendant brings error.    Affirmed.

*W. H. Russell* and *Geo. Jerome* for appellant, claimed
that defendant was not obliged to use extraordinary efforts to
make the needed repairs in the night-time, and there was
therefore no question of negligence to submit to the jury:
*Robinson v. Grand Trunk Ry. Co.* 32 Mich. 322; *Grand
Rapids & Ind. R. R. v. Monroe* 47 Mich. 152; *Toledo,
Canada Southern & Detroit Ry. v. Eder* 45 Mich. 329; *Ste-
phenson v. Grand Trunk Ry. Co.* 34 Mich. 323; *Case v. St.
Louis &c., Ry. Co.* 75 Mo. 668; *Clardy v. St. Louis &c.,
Ry. Co.* 73 Mo. 576; *Aylesworth v. Chicago R. R. Co.* 30
Iowa 459; *Vurco v. Chicago, M. & St. P. Ry. Co.* 11 Amer.
& Eng. R. R. Cases 419; *Norris v. Androscoggin R. R. Co.*
39 Me. 274.

*M. M. Burnham, Aaron Perry* and *Thos. J. Davis* for
appellee, cited *Hoppe, Adm'r v. Chicago, M. & St. P. Ry.*
61 Wis. 357; *Nelson v. Chicago, M. & St. P. Ry.* 60 Wis.
320.

MORSE, C. J. The plaintiff in this case brought suit before a justice of the peace, in the county of Oakland, to recover the value of a horse killed by one of the defendant's trains on the night of October 20, 1882, and recovered a judgment against defendant for the sum of $100 damages and costs of suit. The defendant appealed to the circuit court for the county of Oakland, and on the 11th of December, 1884, a judgment was again rendered against defendant for $100 damages and costs of suit.

During the day, from some cause not known, a fire destroyed about six rods of a board fence on the line of the railway adjoining plaintiff's pasture field, about one mile from the center of the village of Holly. In the morning when the section hands went by, the fence was in good condition. On their return from their work in the afternoon before sundown, the section-gang, consisting of the foreman and three others, stopped the hand-car and observed the gap in the fence, and went on to Holly without taking any steps to repair it. The next morning the first work done by them was to rebuild the fence. Sometime in the night the horse of plaintiff got on the track and was killed by defendant's train.

The plaintiff and his son testified that they saw the track-men stop opposite where the fence was burned that afternoon, but neither of them knew the fence was defective until next morning, when the track-men notified plaintiff that his horse was killed. Both also testified it was before sundown when they saw the section-men stop, and that it was three-quarters of a mile to the depot at Holly. Thomas Ryan, one of the track-men sworn on behalf of the plaintiff, testified that he had been in the employ of defendant under the section foreman, Ed. Dunn, that summer, and on the 20th day of October, 1882, was on the hand car in the afternoon returning to Holly from work. The men on the car, the foreman being one of them, stopped the car for a moment opposite the gap in the fence, and he noticed it. The foreman said nothing, but ordered the car to go ahead, and when they arrived at Holly, their day's work being done, he dismissed them. It was a nice day, and a nice evening also, and

it was not yet sundown when they stopped at the hole in the fence. It was three-quarters of a mile to Holly and took them about ten minutes to go one way. The field had been used by the plaintiff as a pasture that summer, and was so used that day. In his opinion, if the things had been right there, it would not have taken but a little while to repair the fence; but there was nothing at the gap to fix it with, and by the time they could have got the materials there it would have been pretty difficult to drive nails, as it would have been pretty dark. Defendant's counsel asked the court, under the proofs, to direct a verdict for the defendant, on the ground that the evidence showed no negligence in defendant.

It was admitted that the horse was killed by defendant's cars, and there was no question but that the fence was one that the company was bound to keep in repair under the statute. The court refused to so direct a verdict, and charged the jury substantially as follows on the question of negligence: The law governing this case gives the defendant railway company reasonable time to procure materials and repair the defective fence in the highway before they can become liable under the law for any damages accruing in consequence of the defect in the fence. In this case, if the jury finds from the facts that have been adduced that the defendant company had reasonable time, after notice of the defect in the fence in question, to have procured the necessary materials and repaired it by the use of ordinary diligence, and if the jury further find that the company did not use proper care and reasonable diligence in making the repairs, and they find that there was time, on the day in question when the same was discovered, to have procured the materials and made the necessary repairs before night, then the defendant company would be liable in the law for such damages as the jury find the plaintiff suffered in consequence of the defendant's neglect, if there was neglect. If the jury should find from the proof that there was not time before night on the day in question to procure the necessary materials and to repair the defective fence, and the jury should find that the company set about to repair the fence in a rea-

sonable time afterwards, or set about to procure the materials
and repair the fence in a reasonable time after notice, then
the defendant company will not be liable.

It is insisted that this was error; that from the evidence it
clearly appears that the fence could not have been repaired
before night set in; and that the defendant was under no
obligation to use extraordinary efforts to make the needed
repairs in the night-time. The court fairly left it to the jury
to say whether or not, with reasonable diligence, the fence
could have been repaired before night; and instructed them
plainly that if it could not have been so repaired before
night, the railroad company was not liable. Because the
track-man Ryan testified that in his opinion it would have
been pretty dark before they could have finished the repair-
ing did not preclude the jury finding from the other evi-
dence and circumstances in the case that it could have been
done; and we are not prepared to say, in a case like the
present, when the defect was discovered before sundown by
the foreman of the track gang, that it was not the duty of these
men to at once set about the business of getting materials
and repairing the fence, even if it would have taken a few
minutes after dark to complete the work. It seems to me
that the charge of the court was even more favorable to the
defendant than it could reasonably ask under the law.

The men whose duty it was to repair this fence discovered
it before sundown upon a pleasant, fair-weather day, with a
pleasant evening following. They knew that the field it
separated from their track was a pasture for plaintiff's animals,
and that they were in it that day and likely to remain there
during the night. They knew that the trains of the company
would pass over the track during the night, and that there
was liability of some of plaintiff's stock straying upon the
track and getting killed or injured. It was but ten minutes'
ride to Holly, where, presumably, at the defendants' depot,
were the necessary materials to close up the break in the fence.
Yet they made no effort in any way to fix the fence until the
next morning. They left the gap there and went on to Holly,
where the foreman dismissed them. They did not even take

the trouble to notify the plaintiff or any of his family that the fence was down. Not until the horse was killed did any of them take any steps whatever to save the property of plaintiff from a danger that was evident. The same outlay of time expended in notifying him of the death of his horse would, the evening before, in all probability have prevented the loss.

This is not like the case of *Stephenson v. Grand Trunk Ry. Co.* 34 Mich. 323, where the foreman was not notified of the defect in the fence until eight o'clock of a December evening, after his men had been dismissed from their day's labor and gone to their homes, and the notice was brought to him by a person not connected with the railroad or the plaintiff. In this case the foreman saw the hole in the fence himself, while his men were with him, their day's work not yet ended, and under his control and subject to his orders; and yet, without any care whatever, but with the utmost indifference to the naturally to be expected consequences, he deliberately turned away, dismissed his men, and left the defect without even the warning that a common and ordinary regard for the rights of others would have prompted.

In the case of the *Illinois Central R. R. Co. v. Dickerson* 27 Ill. 55, it was held that it was not the duty of a railroad company to keep a patrol at night the whole length of their line to see that the fences were not broken down or burned up; but the court rightfully refused to reverse the judgment against the corporation, as it appeared that the foreman of the section gang, whose duty it was to keep the fence in repair, passed down the road about six o'clock the night the cattle were killed, and by the place where the fence was defective and through which the cattle escaped upon the track. The foreman testified that he did not think the fence was down when he passed by; he did not see it down, but it might have been. The plaintiff was allowed to save his judgment, because there was other evidence that the fence was down at that time, and the foreman evidently testified from general observation rather than to having his attention particularly directed to the place where the fence was claimed

to be defective. In other words, the plain inference of the reasoning of the court is, the jury, from the evidence, had a right to find the fence was down, and if so, the foreman not seeing it, this was in itself negligence.

A railroad corporation should be held to the same vigilance and activity in keeping a fence in repair as good business men engaged in any calling or industry where fences are required, would naturally exercise in the prudent care of their own property liable to be injured or destroyed by the breaking or burning of a fence. And the question whether an ordinarily prudent farmer,. having crops inclosed from animals running outside, discovering such a break in his fence as this, at the time of the day these track-men found this gap, would not at once have set about repairing it, is, in my view of the law, a fair question to submit to a jury, if it is not absolutely certain that he would do so. I think no fair, unbiased panel of twelve men would answer such a question in the negative. And even if there is a fair chance of difference among candid, unprejudiced men upon any question of this kind, then it cannot be taken by a court away from the jury. And a disregard of the same degree of care in saving the property of others from injury by its action that an ordinarily prudent man would exercise in protecting his own property, is negligence in this corporation, as it would be in an individual.

It cannot be said that the facts and circumstances in the case before us lead inevitably to the conclusion that there was an absence of negligence on the part of the defendant. "Negligence is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered. In such cases, if unbiased men would differ as to such inferences, then they cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout." *Hill v. City of Fond du Lac* 56 Wis. 246.

In this case the nature of the break in the fence ; the dis-

tance to defendant's depot; the time it would take to go there, get the necessary materials, and return and repair the fence; the time of day and the season of the year when it was discovered;, by whom it was discovered; the action of the railroad employees whose duty it was to repair it, and that they knew the injury likely to happen if it was not fixed, and knowing this, did not notify the plaintiff, or manifest any concern about it till morning—were, in my opinion, such facts and circumstances as were peculiarly within the province of a jury, and properly belonged to no other tribunal. It was for them, and them alone, to decide whether, under such facts and circumstances, the defendant used such proper diligence as a reasonably prudent man would in protecting his own property from damage or destruction. Therefore no error was committed, and

The judgment of the court below will be affirmed with costs.

CHAMPLIN and SHERWOOD, JJ. concurred.

CAMPBELL, J. The declaration in this case charges no negligence but failure to keep up a proper fence. And under this declaration and the facts in the record no question could arise except whether the fence which was injured was allowed to remain unrepaired an unreasonable time. And, as the injury was done the same evening, the only question of negligence, as injurious to plaintiff, was whether the fence should have been repaired that evening. There is nothing alleged which could bring into the controversy any failure of the agents of the road to send messages to plaintiff to tell him what had happened to his fence.

Negligence being the cause of action alleged, it devolved on plaintiff to prove it by sufficient evidence. It could not be assumed without pertinent proof. There was no complaint of the original fence. The injury to the fence is shown by plaintiff, by a witness called by himself, to have been first known a few minutes before sundown. The only witness who showed any notice to the company of the burning of the fence was one of the men who was employed on the road,

and who passed in a hand car on the way to Holly. There was no proof from any one, except incidentally, that there were repairing materials obtainable. The witness referred to indicates that they were to be found at Holly, but he distinctly gave it as his opinion that before they could be found and brought to the place where they were needed, it would be too dark to do the work without difficulty, if at all. His testimony clearly negatives any negligence in not repairing the fence that evening, and it is the only testimony on which plaintiff could rely to make out the notice to the company.

I do not think that juries can be allowed to disregard testimony and form their own conjectures, for which they have no legitimate data. In my opinion there was no proof to go to the jury to make out a failure of the defendant to act with reasonable diligence.