GEIERMANN *v.* DETROIT INTERNATIONAL
BRIDGE COMPANY.

1. NEGLIGENCE—EVIDENCE—INFERENCES—JUDGES—JURY.

It is for the trial judge to say whether negligence may be inferred from the evidence and, if submission be made, for the jury to say whether negligence ought to be inferred therefrom.

2. SAME—EVIDENCE—INFERENCES—QUESTION FOR JURY.

A question for determination by a jury is presented where evidence as to negligence is such that unbiased men would differ as to inferences to be drawn from evidence that is undisputed.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  38 Am Jur, Negligence §§ 290, 344, 355.
[3, 4]  8 Am Jur, Bridges §§ 93, 94.

3. BRIDGES—TOLL BRIDGE—SAFETY PRECAUTIONS.

Toll bridge owners are obligated to exercise due regard and caution for the safety of the users of the bridge and to use reasonable safeguards for their protection.

4. SAME—NEGLIGENCE—ICY PAVEMENT—KNOWLEDGE.

Evidence presented as to condition of pavement of toll bridge late in November and as to defendant owner's knowledge thereof by reason of sanding operations being conducted at time plaintiffs' car collided with guardrail of suspension bridge after proceeding part way toward crest of bridge on ice-covered pavement *held,* to present question for jury as to whether or not defendant was negligent in permitting plaintiffs' car to proceed over the bridge at that time.

Appeal from Wayne; Bach (Arthur M.), J., presiding. Submitted October 9, 1958. (Docket Nos. 31, 32, Calendar Nos. 47,081, 47,082.) Decided January 12, 1959.

Case by Myrtle J. Geiermann against Detroit International Bridge Company, a Michigan corporation, for personal injuries sustained when automobile skidded on icy bridge. Similar action by Louis J. Geiermann for medical expense. Cases consolidated for trial and appeal. Directed verdicts and judgments for defendant. Plaintiffs appeal. Reversed and remanded.

*Daniel P. Cassidy,* for plaintiffs.

*Ward, Plunkett & Cooney (John D. Hayes,* of counsel), for defendant.

BLACK, J. These suits for negligence* travel the precarious border of doubt between jury verdict and instructed verdict. The question, as in scores

---

* The 2 cases before us were tried and adjudged as one. The first suit was brought against defendant by Myrtle J. Geiermann; a married woman, for personal injuries. The second was brought by Mrs. Geiermann's husband for damages derivative from the cause alleged by Mrs. Geiermann.

of like cases appearing in our reports, is whether actionable negligence on the part of the defendant may be inferred from the testimony taken below. The trial judge, ruling in negation, granted the defendant's motion for a directed verdict—made at close of plaintiffs' case—and entered judgment for defendant. The case is here on plaintiffs' appeal.

In recent months we have grappled anew with the stated question (see *Kaminski* v. *Grand Trunk W. R. Co.*, 347 Mich 417; *Gapske* v. *Hatch*, 347 Mich 648, 654; *Indiana Lumbermens Mutual Ins. Co.* v. *Matthew Stores*, 349 Mich 441; *Higdon* v. *Carlebach*, 348 Mich 363; *American Airlines, Inc.*, v. *Shell Oil Co., Inc.*, 355 Mich 151; *Mitcham* v. *City of Detroit*, 355 Mich 182). Definite agreement appears in *Kaminski* (p 419) that "It is for the trial judge to say whether negligence *may* be inferred from the evidence and, if submission be made, for the jury to say whether negligence *ought* to be inferred therefrom." However, and as noted in *Kaminski* from *Carver* v. *Detroit & Saline Plank Road Co.*, 61 Mich 584, 593, the difficulty is usually not one of agreement upon the quoted rule "but in the application of it to the facts of the particular case." Here the same difficulty confronts us.

Looking to more of our earlier decisions for guidance, we come upon *Crosby* v. *Detroit, G. H. & M. R. Co.*, 58 Mich 458. In *Crosby* plaintiff's horse was killed by one of defendant's trains. The horse entered upon defendant's right-of-way through an opening (caused by fire during the day preceding nighttime death of the horse) in the wooden right-of-way fence. The defendant was legally obligated to keep the fence "in repair." The direct issue was whether defendant's track gang, having discovered the opening (just before dark and as the gang was returning by handcar to the nearby village of Holly from the work of the day), should then and there

have repaired the gap, the horse at that time being safely within Mr. Crosby's pasture, rather than delay (as the track gang did) the repair job until morning, after the horse was struck. This Court, upholding a verdict and judgment for the plaintiff, quoted with approval (p 463) the following from an early Wisconsin case (*Hill* v. *City of Fond du Lac*, 56 Wis 242, 246 [14 NW 25]):

"Negligence is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered. In such cases, if unbiased men would differ as to such inferences, then they cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout."*

*Crosby* brings to the fore, in this case of Geiermann, the element of time for performance of apparent legal duties. The defendant toll bridge owner was, then weather-laden and presently related circumstances considered, burdened with certain duties —"proportionate to the danger apprehended"—owing Mrs. Geiermann and similarly situated motorists. With respect to such duties counsel are in agreement.

---

* This quotation, adopted in *Crosby* from *Hill*, traces back to the century-old case of *Ireland* v. *Oswego, H. & S. Plank Road Co.*, 13 NY 526 (See *Townley* v. *Chicago, M. & St. P. R. Co.*, 53 Wis 626 [11 NW 55]). The complete quotation, taken from the opinion of Johnson, J., in *Ireland*, is as follows (p 533):

"It by no means necessarily follows, because there is no conflict in the testimony, that the court is to decide the issue between the parties as a question of law. The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced and their weight and force considered. In such cases the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements or there be but one statement which is consistent throughout."

They agree upon (and we approve) the general rules, given in *Goodale* v. *Portage Lake Bridge Co.*, 55 Mich 413, *Carver* v. *Detroit & Saline Plank Road Co.*, 61 Mich 584, 8 Am Jur, Bridges, subheading "Duties and Liabilities of Toll Bridge Owners," § 93, p 978, by which toll bridge companies are obligated "to exercise due regard and caution for their [toll users of the bridge] safety, and to use reasonable safeguards for their protection" (quotation from *Goodale*, p 418). Counsel disagree, however, upon the value of plaintiffs' evidence as tending directly or by inference to prove actionable breach of such conceded duties. This brings our attention to the testimonial record.

. Defendant's bridge, extending between Detroit and Windsor over the Detroit river, is of suspended design. A motorist proceeding from Detroit toward Windsor, via the bridge, climbs steadily toward the summit of the suspended roadway, the summit being at the approximate center of the river and some 150 feet above the waters thereof. The roadway of the bridge is paved. Due to greater exposure of the uppermost portion of the surface, such portion doubtless is likely (more than less exposed streets and roadways) to become icy during adverse weather conditions. For this reason, and for maintenance during bad weather of automotive traction upon the pavement of the entire bridge, defendant provides and employs a sanding truck and crew. The truck and crew were "on the job" during the events giving rise to these suits, and it is clear that the higher parts of the bridge had become icy some time—the length of time being in doubt—prior to such events.

Plaintiffs, husband and wife, are residents of Detroit. Their son Louis at the time was attending Assumption college, just outside Windsor. Mr. Geiermann was in northern Michigan on a hunting trip. The date (November 25, 1951) was Sunday following

the regular Thanksgiving week end. The son was due that evening to return to Assumption. Mother and son started the trip late in the day and after dark, the son driving the family car. A cold rain had been falling in Detroit all day. However, no ice or other slippery condition was encountered until, as presently related, the Geiermann car approached the heights of defendant's bridge.

Mrs. Geiermann and Louis proceeded from their home and entered the northern bridge portal, in Detroit. The required toll was paid and "the attendant gestured for the car to proceed." The car proceeded upgrade on the bridge, negotiating without difficulty the left and right turns of the bridge route. At this point Mrs. Geiermann, apparently apprehensive about traction, requested of her son that he "test" the brakes. The son did so and, having found that the brakes "held perfectly," proceeded upward on the bridge route at an average speed-rate of 20 miles per hour. After the car had traversed about 125 yards of the main span of the bridge structure, and while still climbing toward the crest, it suddenly started to skid on what turned out to be ice covering the pavement. The car crashed into the curb and went on over to the guard fence of the bridge, against which it came to rest. Mrs. Geiermann's injuries were sustained in such manner.

The son was thrown from the car and, although shaken up, was not hurt. He found, on attempting to arise from the paved surface, that ice had formed from freezing rain and that the footing was extremely slippery. About this time defendant's sanding truck approached from the opposite direction. The crew thereof was engaged in sanding the surface of the right-hand (Detroit-bound) traffic lane. Apparently the crew intended to turn around, at or near the Detroit portal, preparatory to proceeding over the Windsor-bound lane of travel for the same pur-

pose.  Such lane had not been sanded prior to the mentioned collision.

Several inferences of fact may logically be drawn from the evidence as outlined.  One is that defendant knew that travel over the upper structure of the bridge might slowly or suddenly become hazardous under like conditions of continued rain, low or lowering temperature, and possibly shifting direction of the wind.  Another is that defendant recognized the duty of meeting such conditions and that it was prepared to "use reasonable safeguards" for the protection of motorists engaging its facilities.  A third—and here we approach the crux of decision between verdict by the court and verdict by the jury—is that defendant did discover, at some unknown time prior to the occasion of Mrs. Geiermann's injuries, the icy and, hence, hazardous condition of the upper portion of the bridge pavement.  The latter inference arises from the fact that defendant's sanding crew, apparently alerted and activated prior to entry on the bridge of the Geiermann car, had started tractive operations from or near the Windsor portal and had continued such operations to the approximate time of the Geiermann accident.

We conclude that the foregoing inferences fairly called for denial of defendant's motion for directed verdict and that the onus was cast upon defendant to show, by evidence peculiarly within its knowledge and control, that which was generally represented to us during oral argument, that is to say, sudden and unexpected lowering of temperature at the time was such that no person of reasonable prudence could or would have done more to avert hazard and danger than defendant's employees undertook prior to the collision.  See extended discussion of this approach in *Mitcham* v. *City of Detroit,* 355 Mich 182.

Our decision, so declared, is prompted in part by several questions which, on the present record, ap-

pear proper for jury consideration. Would it not have been an act of reasonable prudence, the conditions considered, to hold traffic at each portal during the short time it would take to commence and conclude sanding operations? Or, the same circumstances considered, should defendant not have warned each motorist, on payment of toll at either portal, of the apparently known conditions of danger ahead? When, in point of time prior to the collision, did defendant learn of the condition which brought its sanding crew into action? Or did the crew actually start sanding operations prior to receipt of knowledge or information of icy conditions above and in commendable anticipation thereof? Generally, did defendant delay, unreasonably under the circumstances, doing that which knowledge fairly called for?

These are questions, the time element considered in relation to duty and apprehended danger, a jury is better equipped to answer than is one man, however skilled in law the latter may be. Would all reasonable men agree that defendant, testing its action or inaction by the showing before us, did fulfill and perform its agreed duties as owing these plaintiffs? We think not, for reasons made clear in *Railroad Company (Sioux City & P. R. Co.)* v. *Stout,* 84 US 657 (21 L ed 745) (quoted with approval in *Thompson* v. *Michigan Cab Co.,* 279 Mich 370, 374, 375), *Grand Trunk R. Co.* v. *Ives,* 144 US 408, 417 (12 S Ct 679, 683, 36 L ed 485, 489) (similarly quoted in *Normand* v. *Thomas Theatre Corp.,* 349 Mich 50, 56), and *Ashman* v. *Flint & P. M. R. Co.,* 90 Mich 567, 575. As was said in *Ashman:*

"When the inquiry arises in any case what an ordinarily prudent man would have done under given circumstances, the judgment of 12 men is obviously better than the judgment of 1, as the experience in life of 12 men must have been, collec-

tively, more varied and extensive than that of any 1 man, however learned in the law he may be; and how men ordinarily act in the presence of danger, or to avoid it, can be better settled by 12 men than 1 man, because their united experiences are brought to bear upon the question, and each has the benefit of the experience of all of them in arriving at a fair, true, and just conclusion."

Reversed and remanded for new trial.    Costs to plaintiffs.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.