## PATRICK *v.* PULTE-STRANG, INC.

1. TRIAL—EVIDENCE—QUESTION FOR JURY.
   Conflicting evidence is a matter for the jury to determine, not the trial judge.

2. SAME—WITNESSES—CREDIBILITY.
   A jury may accept that portion of a witness's testimony which supports jury's conclusion and reject that portion which contradicts its conclusion, where there is testimonial foundation to support a conclusion of fact, irrespective of additional contradictory testimony by the witness.

3. NEGLIGENCE—EVIDENCE—QUESTION FOR JURY—BUCKET OF CONCRETE.
   Negligence which proximately caused plaintiff's injuries may be found by jury when the evidence shows that a bucket of concrete within the control of defendants constructing building was dropped after orders not to do so, and no denial or other explanation is offered by the defendants.

4. SAME—OPERATIVE FACTS.
   The presence or absence of negligence is a conclusion to be drawn from operative facts and is never provable directly.

5. TRIAL—VERDICTS—EVIDENCE.
   The jurors are the fact finders in a jury trial, and the finding they reach decides the case if there is any evidence reasonably supporting it.

6. NEGLIGENCE—EVIDENCE.
   Issue of defendant's negligence is determined from an examination of all the evidence, circumstantial or direct.

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 158.
[2] 58 Am Jur, Witnesses § 862.
[3–8] 38 Am Jur, Negligence § 345 *et seq.*

**7.** Evidence—Jury.

A jury may draw reasonable inferences and conclusions from circumstantial evidence.

**8.** Negligence—Question for Jury—Evidence—Bucket of Concrete.

Evidence showing a bucket of concrete within the control of defendants was dropped after orders not to do so, with no denial or other explanation offered by the defendants *held*, to present a jury question whether defendants were negligent.

Appeal from Wayne; Moynihan (Joseph A., Jr.), J. Submitted Division 1 May 3, 1967, at Detroit. (Docket Nos. 2,267, 2,268.) Decided November 30, 1967. Rehearing denied January 22, 1968.

Declaration by Moses Patrick against Pulte-Strang, Inc., a Michigan corporation, and Guy Smith, for injuries sustained when a bucket of concrete fell on plaintiff. Declaration by Emma Patrick, wife of Moses Patrick, for damages arising from same accident. Judgment for defendants notwithstanding verdicts for plaintiffs. Plaintiffs appeal. Reversed and remanded.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for plaintiffs.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr,* for defendants.

Weipert, J. This is an appeal from a judgment for defendants, entered by the trial judge notwithstanding verdicts of the jury in favor of plaintiffs, a construction worker and his wife, for $100,000 and $3,000 respectively.

Plaintiff Moses Patrick was a laborer in the employ of Malone Brothers, a cement subcontractor on a construction job at the Wylie Groves Junior

High School, under construction in Birmingham, Michigan. Defendant Pulte-Strang, Inc., was the general contractor; its employee, defendant Guy W. Smith, was engaged as a crane operator in the course of the school's construction.

On August 3, 1959, Patrick, together with fellow employees Otto Edinger and Ed Bradley, was spreading concrete on a second floor steel deck of the school. Concrete was lowered to the work area in a large steel bucket, containing about 3/4 cubic yard of concrete, with a total weight of at least 1-1/4 tons. This bucket was attached to a steel cable, suspended from a 50-foot boom of a tractor crane stationed adjacent to the building, requiring it to be lowered through an opening in the roof to the work area. The crane operator, defendant Smith, was to respond to hand signals of plaintiff's employer and foreman John H. Malone, who stationed himself on the roof where he was visible to the laborers and to the defendant, the crane operator being himself unable from his position to see the work area or the bucket after it was lowered through the hole in the roof.

At the time of the accident in question, after the bucket had been lowered many times that morning without incident, the men had fallen behind in their work. Malone signaled the crane operator, by extending both arms, that the bucket was to remain in a "hold" position, meaning that it was to be suspended above the spot where the plaintiff and his fellow employees were working. Employee Edinger testified that the bucket had been in a "hold" position over the heads of the workmen approximately 10 minutes before the accident, at a point approximately 7 feet above the floor level. Malone similarly testified to the suspension of the bucket at that level.

John Malone then turned around, facing the out-side of the building to light a cigarette. When he turned back the accident had happened: Patrick was down, and there was a commotion as others rushed to his assistance, including Michael Malone (John's brother, also a foreman) who took Patrick to the hospital.

Otto Edinger, also injured at the same time, testi-fied that the bucket was being kept in a "hold" posi-tion for about 10 minutes while the men worked under it spreading the cement. He heard someone cry "heads up," at which he ducked and was hit on the right shoulder. He could not say how the bucket had hit him.

On the critical question concerning the location of the bucket at the time of the injury, the testimony is in conflict. The signalman, John Malone, when he saw that Patrick had fallen, said that it was still in a holding position, 7 feet above the deck. His brother, Michael Malone, testified on the con-trary that he found the bucket suspended several feet lower—specifically, within 8 or 9 inches above a wheelbarrow on the deck. Patrick himself testi-fied that while he was grading the concrete with Bradley and Edinger he was suddenly struck on the head by the bucket.

The testimony is also in conflict concerning a purported admission by the crane operator. Plain-tiff Patrick testified as follows:

"I don't know when it was but the operator who was operating the crane—I don't know who he was —he said the signals crossed; he thought they meant to lower the bucket and he said that's what he did and they meant to raise it—or he wouldn't have hurt me for anything in the world."

Defendant Guy Smith, although acknowledging that he was the only crane operator on duty at the

time, denied any such conversation and had no recollection of the accident. He claimed to have been told about it only at the end of work that day.

Substantial medical testimony indicated that plaintiff Moses Patrick, a married man 36 years of age with six children, suffered total and permanent disability from serious brain injuries. The jury verdict of $100,000 in his favor, and for his wife on her derivative claim for $3,000 was set aside by the trial judge, and judgments entered for the defendants.

Unfortunately the trial judge rendered no opinion. Appellees seek to support the judgments entered notwithstanding the verdicts by the claim that the record contains no evidence of negligence on the part of defendants. Yet appellees' brief on this score is primarily devoted to an argument on the weight of the evidence.

The condensed statement of facts with which we have prefaced this opinion is, with differences of emphasis, substantially conceded by appellees. They urge, however, that the crane operator's "own uncontradicted testimony was that he lowered the bucket only upon receiving a signal to do so." Appellees then piece together parts of the testimony of Edinger and John Malone to indicate that Smith must have in fact received a signal to lower the bucket, negligently given by John Malone, when it was unsafe to do so, which would of course not show negligence of the defendants but of the employers of Mr. Patrick. But the foundations on which appellees laboriously erect the edifice of this conclusion fail. Crane operator Smith did not testify that *on this occasion* he lowered the bucket only on signal. He admitted to having no knowledge of the accident or its circumstances, testifying only as to his *customary* procedures. Moreover, John Malone's last lowering signal, according to

Malone himself, was the one which brought the bucket *to,* not *from,* the 7-foot level, at which point he directed it to be held—whereupon the accident happened without another signal by him.

It is true that John Malone also testified that when he looked back, finding Patrick injured on the deck, the bucket still remained at the 7-foot level in the "hold" position. This statement contradicts not only the physical evidence (Patrick and Edinger could not have been struck but by a descending bucket), but also the testimony of Michael Malone that the bucket was found suspended a few inches above the wheelbarrow. What the fact of the matter was, in the presence of conflicting evidence, was obviously not for the trial court to determine but for the jury.

The critical consideration on this review is that the jury had a right to so conclude, since there is testimonial foundation for the descent of the bucket, and for plaintiffs' claim that such descent occurred after the last signal which John Malone testified he gave. The jury had the legal competence to disregard that portion of John Malone's testimony which contradicted the physical facts as corroborated by other competent witnesses whom they were entitled to credit, while accepting the remainder of his testimony. *Hillman* v. *Schwenk* (1888), 68 Mich 293, 296; *Gerardo* v. *Brush* (1899), 120 Mich 405, 409.

Since there is evidence in the record from which the jury could legitimately conclude that the bucket within the control of defendants was dropped after orders not to do so, it would be a strange rule of law which would prohibit the jury from drawing the conclusion of negligence and proximate cause. That no witness actually saw the crane operator lower the bucket is not significant. It is only a common-sense inference that if the bucket was pre-

viously at a 7-foot level, the plaintiff and another
employee (5 feet 11 inches tall) working beneath
it were both then struck, and the bucket came to
rest within 8 inches of a wheelbarrow on the deck
beneath it, the bucket must have dropped that dis-
tance before coming to a halt, and would not have
descended but for defendant's lowering it or suf-
fering it to be lowered. Under such findable facts,
the hypothesis that plaintiff walked into the bucket
is obviously discredited, as the jury could find that
the bucket was situated above the employees, and
that both were simultaneously struck and injured
(Patrick on the head, Edinger on the shoulder).
Defendants offering no denial of the incident what-
ever, or any explanation as to why the bucket was
caused to be lowered, or fell, the jury was inescap-
ably left with the right to conclude that the bucket
fell through the agency of the defendants and with-
out the authorization of the signalman upon whom
the crane operator was admittedly obliged to rely
since he was otherwise operating "blind".

Negligence *vel non* is always a conclusion from
operative facts and never provable directly. The
conclusion may be more or less clear; it remains
a conclusion concerning relationships between peo-
ple, and would not be less so if every aspect of an
occurrence were observed by a dozen unanimous
witnesses. In a jury trial the jurors are the con-
clusion-drawers, and the conclusion they reach de-
cides the case if there is any evidence reasonably
supporting it. As to Patrick's conversation with
the crane operator, for example, whether there was
such a conversation is debatable, and if so, its pre-
cise terms and whether it constituted an admission
of fault is for the jury to decide. Appellees put
selected pieces of the evidentiary puzzle together
in a way that would show the absence of negligence;
but the question rather is, whether on a favorable

view to appellants it is reasonably possible to put them together otherwise. Appellants on their part find the record "overwhelmingly convincing to establish fault." It is enough for us to find that it clearly presents a jury question.

There is adequate authority in support, the most recent case being *Lipsitz* v. *Schechter* (1966), 377 Mich 685, reversing (1965), 1 Mich App 137, a case involving a tenant's employee injured when a window screen fell on her from a window of an apartment building. This Court had concluded that there was "no testimony in the record before us that would indicate any defective condition existing in the screen which struck the plaintiff." (1 Mich App 137, at 140.) In reversing, the Supreme Court said p 690) :

"The question here, as in that case [*Gadde* v. *Michigan Consolidated Gas Company* (1966), 377 Mich 117, where a gas explosion shortly following a service call by defendant's repairman was deemed sufficient to establish negligence] is whether, in the light of *all of the evidence*—circumstantial, direct, or whatsoever it may be, the plaintiff has produced sufficient evidence from which a jury might make a finding of negligence."

The Supreme Court concluded that (p 691) :

"In this case it seems equally evident that the screen, if it had been properly secured, would not have fallen."

Other cases illustrative of the doctrine of circumstantial evidence of negligence, sometimes called the Michigan equivalent of the *res ipsa loquitur* rule, are *Burghardt* v. *Detroit United Railway* (1919), 206 Mich 545 (5 ALR 1333) (trolley pole falling and striking pedestrian); *Barnowsky* v. *Helson* (1891), 89 Mich 523 (15 LRA 33) (roof of building under construction fell, killing plaintiff's

decedent); *Maki* v. *Isle Royale Copper Co.* (1914), 180 Mich 624 (bucket becoming detached from chain and falling on plaintiff); and *Detzur* v. *Stroh Brewing Co.* (1899), 119 Mich 282 (44 LRA 500, 5 Am Neg Rep 371) (falling glass from a previously broken window on a calm day). These cases make clear what the Michigan Supreme Court has repeatedly said in recent years, returning to the traditional rules enunciated by Justice Cooley in *Detroit & M. R. Co.* v. *Van Steinburg* (1868), 17 Mich 99, that a judge must exercise extreme caution in removing an issue from the jury by ruling on it as a matter of law. Where reasonable men may differ, it is for the jury to decide, with the right in so deciding to draw reasonable inferences and conclusions from circumstantial evidence.

Extended discussion of current Michigan doctrine may also be found in *Kaminski* v. *Grand Trunk Western Railway Co.* (1956), 347 Mich 417; *Higdon* v. *Carlebach* (1957), 348 Mich 363; *Indiana Lumbermens Mutual Insurance Co.* v. *Matthews Stores, Inc.* (1957), 349 Mich 441 (concurrence Talbot, Smith, JJ.); *Geiermann* v. *Detroit International Bridge Co.* (1959), 355 Mich 73; *Gadde* v. *Michigan Consolidated Gas Co.* (1966), 377 Mich 117; and *Mitcham* v. *City of Detroit* (1959), 355 Mich 182.

Appellees seek to distinguish the "falling object cases" cited above *(Lipsitz, Burghardt, Barnowsky, Maki,* and *Detzur),* on the ground that such cases arose out of accidents "which, in the court's view, would not normally have occurred in the absence of negligence" whereas here, "the lowering of the bucket into the area where Patrick worked was not an unusual happening," but rather a commonplace occurrence. In *Maki* v. *Isle Royale Copper Co., supra,* however, it was also a commonplace occurrence for a bucket to be lowered down a mine shaft. But it was *not* a commonplace occurrence for it to

be lowered without sufficient attachment; accordingly, it was there held that the unexplained fact that the bucket fell could justifiably have been attributed by the jury to negligent failure to attach securely. In the case before us it was of course true that the bucket would be lowered on frequent occasions in the course of construction, *but only in response to signals to the crane operator directing him to do so.* The jury below had a right to find that the last signal given by the signalman beforehand was that it should not be lowered further, and that its subsequent descent was attributable to the failure of the crane operator to follow the orders on which he was admittedly obliged to rely.

It may indeed be true, as appellees maintain, that one of the factors (whether or not decisive) running through these cases is the absence of some other reasonable explanation of the occurrence not involving negligence by the defendant. But what other explanation of this accident was advanced by appellees below, so eminently reasonable as to make the inference of negligence (otherwise drawable from the facts) illegitimate, a mere will-o'-the-wisp? None whatever. Appellees urged only what amount to jury arguments, first unsuccessfully on the jury and then successfully on the judge, why the testimony favoring appellants should be disregarded.

Reversed and remanded with instructions to enter judgments on the jury's verdicts, with costs to appellants.

J. H. GILLIS, P. J., and T. G. KAVANAGH, J., concurred.