Rosetta S. Carver, Administratrix, v. The Detroit & Saline Plank Road Company.

*Highways—How. Stat. secs. 1365–6—Providing for widening or fencing highways along a river bank—When reduced to less than 50 feet in width by washing away of bank or other causes—Apply to plank-road company—Organized under charter and plank-road laws of 1848—Sections cited only cover highways originally 50 feet wide at point to be protected—And which have become reduced below that width, etc.—Statute penal as to toll-roads, and cannot be extended by construction beyond plain meaning of its terms—Legislative intent is to characterize as unsafe for travel highways along river bank where worked part is less than 35 feet wide—See How. Stat. sec. 1366—Which it is proper to consider in connection with Act 244, Laws of 1879 (repealed, and its main provisions re-enacted, by Act 264, Laws of 1887)—Providing for collection of damages sustained by reason of defective highways—Defects in construction, as well as through failure to repair, are covered by this act—And unless highway is kept in reasonably safe condition for travel by day and night—Action lies under said act for injuries resulting from such unsafe condition—Negligence—Plank-road company—Guilty, on state of facts set forth in head-note 5, of neglect of statutory duty and that imposed by its relations to the public—And liable in suit by wife for death of husband who drove off the embankment, in absence of contributory negligence on his part—For general statement of rule governing action of trial court in negligence cases, see page 592–3 of opinion, and authorities cited—Each case depends upon its own facts and circumstances—Difficulty not in the rule, but in its application to particular case—Proper, in cases of doubt, to submit evidence to jury under proper caution and instructions—Its sufficiency and weight are questions exclusively for jury—Case can be taken from them only in absence of any legal evidence which, if believed, will establish plaintiff's case.*

1. How. Stat. §§ 1365–6 (§§ 1–2, Chap. 5, Act 243, Laws of 1881), making it the duty of the highway commissioner to widen, or protect by fencing, any highway passing along the bank of any river, lake, or water-course which shall *become* reduced to a width of *less* than fifty feet by the washing away of the bank, or from any other cause, apply to a corporation, organized under a charter and the general plank-road act of 1848, which has constructed a toll-road on an *existing* highway and is operating the same.

2. How. Stat. § 1365 (see head-note 1), only applies by its *terms* to such public highways as were originally 50 feet or more in width, where they pass along a river bank, etc., and *have become* reduced to less

than that width by the falling or washing away of the bank, or from other causes. The statute is penal, so far as it affects toll-roads, and cannot be extended by construction beyond the plain meaning of its terms.

3. The Legislature intended to characterize as *unsafe* for travel public highways along the banks of lakes, rivers, and other water-courses, in which the *worked* part was *less* than 35 feet in width (How. Stat. § 1366); and it is proper to consider this section in connection with Act 244, Laws of 1879, providing "for the collection of damages sustained by reason of defective public highways." (How. Stat. § 1442, *et seq.*)

4. The *defects* in highways covered by Act 244, Laws of 1879, extend to defects in *construction*, as well as through *omission to repair*, and *neglect* to keep in a condition reasonably safe and fit for travel by day and by night; and unless the highway is *so kept*, it constitutes a defect for which, if injury results, an action will lie under the act cited.

5. Defendant is a corporation organized under a charter and the general plank-road act of 1848. Its road was constructed on an *existing* highway leading from Detroit to Saline, passing near the river Rouge, at which point the road bed is 24 feet wide, with a ditch and fence on the left, and on the right a grass plat of four or five feet in width, and then a precipitous bank to the river below, distant from the *center* of the road from 60 to 75 feet. The road at this point is of the same width it has been for many years, and no change has occurred since defendant's control under its charter, which requires it to construct, maintain, and keep its roadway 16 feet in width, in good repair and fit for travel, but nowhere relieves defendant from protecting the traveling public against obvious dangers from such embankment.

*Held*, in an action for damages for the death of plaintiff's husband, who drove off said embankment and was drowned, that, on the *undisputed* facts as above stated, defendant had neglected a duty imposed alike by statute and by its relations to the public, and that if the jury found that her husband's death was the *direct* consequence of such neglect of duty, and not contributed to by his own act, carelessness, or omission to exercise due care, their verdict should be for the plaintiff.

6. The general rule governing the action of the trial court in actions for negligence has been well stated in *Metropolitan Ry. Co. v. Jackson*, 3 L. R. App. Cases, 193, and in *Ryder v. Wombwell*, L. R. 4 Exch. 38 (see page 592 of opinion); but each case must depend upon its own facts and circumstances, and nothing but general principles can be laid down by the Court. The difficulty is not in the *rule*, but in its *application* to the particular case. In all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution

and instructions, to determine whether, from the facts found, negligence ought to be inferred. In determining the preliminary question of law, it is not the province of the court to pass upon the *weight* of the evidence, for its *sufficiency* and *weight,* and the *effect* to be given thereto, are questions *exclusively* for the jury; and it is only where there is *no legal* evidence which, if believed, will establish a fact material to plaintiff's case, that the trial judge can take the case from the jury.

Error to Wayne. (Jennison, J.) Argued May 4, 1886. Decided June 17, 1886.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion and head-notes.

*Parker & Burton* (*John Ward,* of counsel), for appellant.

*C. A. Kent,* for defendant :

The general doctrine as to the liability of towns for defects in highways outside of the traveled portion of the road is that such defects must be so near the traveled part as to render its use unsafe ; and they are not liable for failure to erect barriers to prevent travelers from straying from the traveled part and suffering from dangers not in close proximity thereto : *Murphy v. Gloucester,* 105 Mass. 472 ; *Howard v. North Bridgwater,* 16 Pick. 189 : *Sparhawk v. Salem,* 1 Allen, 30 ; *Rice v. Montpelier,* 19 Vt. 470.

CHAMPLIN, J. In this case a motion for a rehearing was made and granted. The opinion of the Court rendered upon the first hearing was filed October 28, 1885 (25 N. W. Rep. 183), in which it was stated that it was not necessary to consider the extent of the duty of the defendant, either at common law or under its charter, in this class of cases ; that it is enough that, under the general statutes of this State passed in 1877, it was made the duty of the defendant to erect the barrier against the danger which overtook the plaintiff's husband at this place therein provided for ; citing laws 1877, pp. 135, 136, §§ 5, 8.

This statute was relied upon by the plaintiff upon the argument of the cause as creating the duty of defendant to fence or erect a barrier at the point in question, and the de-

fendant's counsel objected to the plaintiff's right of recovery under that act, for four reasons stated by him in his brief, and argued upon the hearing, treating the law as in existence, but contending that it was inapplicable.

The fact that the act in question was included in Act No. 242 of the Session Laws of 1881, repealing a large number of statutes relating to highways and bridges, escaped at the time the attention of the counsel for the parties and the Court also. After the opinion was filed, counsel for defendant, on a motion for a rehearing, called our attention to the repeal of the act of 1877 ; and consequently we ordered a rehearing of the case.

It is urged by counsel for plaintiff that the repeal of the act of 1877 does not relieve the defendant from the performance of a statutory duty, inasmuch as other statutes passed subsequently to that of 1877, and which are still in force, impose, in effect, the same duty upon defendant with respect to keeping the highway under its control in good repair and reasonably safe and fit for travel.

The act of 1881 by which the several statutes were repealed, after enumerating some 19 different statutes, states, " which said several statutes and acts, and acts amendatory thereof, being either obsolete or superseded by other legislation, are hereby repealed." Upon the same day this act was approved another act to revise and consolidate the highway laws was approved, the fifth section of chapter 5 of which provided that—

" It shall be the duty of the commissioner of highways of each township to see that all plank or gravel road companies owning or controlling any kind of toll-road maintain their roads in as good and safe condition as he is required to keep the public highways of his township."

Section 1 of the same chapter makes it the duty of the commissioner, when any public highway passes along the bank of any lake, river, or other water-course, by the falling or washing away of the bank, or from any other cause, shall become reduced to a width of less than 50 feet, to proceed, within 10 days after knowledge or notice of the defect, and

examine the same; and, if he finds it to be less than 50 feet wide, to forthwith lay out, open, and widen and work such highway in and upon the adjacent land to the width of 50 feet. The next section provides as follows:

"When any such highway is less than fifty feet wide, and more than thirty-five feet wide, the commissioner may, in his discretion, instead of widening the same, erect near the edge of the bank, and thereafter maintain in good order, a substantial railing or fence, which shall be at least three feet high, and sufficiently strong to prevent persons, carriages, and animals from falling over such bank."

These provisions of the law undoubtedly apply to the defendant corporation, and create a duty which is incumbent upon the defendant to observe in cases falling within the provision of the first section. This section, by its terms, only applies to such public highways as were originally 50 feet or more in width, where they pass along a river bank, lake, or water-course, and by falling or washing away of the bank, or from other cause, have become reduced to a width less than 50 feet. The statute is penal, so far as it affects toll-roads (chapter 5, § 5), and cannot be extended by construction beyond the plain meaning of its terms. There is no evidence in the case that the toll-road of defendant, at the point where the accident occurred, has been reduced in width from the falling or washing away of the bank of the river, or from any other cause. On the contrary, the road at this point is shown to be of the same width that it has been for many years prior to the passage of the above statute, and that no change has occurred since the defendant company has had control of this road under its charter. The evidence shows, however, that the worked portion of the road at this point is less than 30 feet. The road bed is 24 feet in width, and as you proceed west there is a ditch on the left of this roadway, and a fence, and on the right there is a grass plat of four or five feet in width, and then a precipitous bank to the water of the river. It is such a place as the statute contemplates should, if it had become reduced in width, be either restored to the width of 50 feet or be protected by a railing or fence.

The Legislature evidently considered a road so narrow as 35 feet, bordering upon the bank of a lake or river, unsafe for public travel, without the protection of a railing or fence to prevent persons, carriages, and animals from falling over such bank. It is proper, therefore, to consider this statute in connection with another now to be mentioned, for the purpose of affording some light upon the language imposing the duty upon those having control of public highways, at all times, to keep them in good repair, so that they shall be safe and convenient for public travel.

By Act No. 244 of the Session Laws of 1879[1] the Legislature enacted—

" That any person or persons sustaining bodily injury, upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets * * * in good repair, and in a condition reasonably safe and fit for travel, by the township, village, city, or corporation whose corporate authority extends over such public highway, street, * * * · and whose duty it is to keep the same in good repair, such township, village, city, or corporation shall be liable to, and shall pay to, the person or persons so injured or disabled, just damages, to be recovered in an action of trespass on the case, before any court of competent jurisdiction."

This act was entitled—

"An act for the collection of damages sustained by reason of defective public highways, streets, bridges, cross-walks, and culverts."

It was in force when the repealing law of 1881 was passed, and was left unrepealed, evidently as one of the superseding acts referred to in Act No. 242; and it also comes within the purview of Act No. 243 of the Laws of 1881,[2] and especially within the scope of chapter 5, § 5, above quoted, by which the duty is imposed upon toll-roads of maintaining their

---

[1] Repealed by Act 264, Laws of 1887, by which its main provisions are re-enacted. Sec. 5 abrogates the common-law liability of towns, villages, and cities: Repealing act contains no saving clause.

[2] Secs. 1 and 3 of chapter 5 amended by Act 54, Laws of 1885.

roads in as good and safe condition as is required of those officers having control of highways in townships.

I have no doubt that the defects in highways covered by the act of 1879 extend to defects in construction, as well as defects through omission to repair, and to neglect to keep the public highways in a condition reasonably safe and fit for travel by day or by night; and unless it is so kept, it constitutes a defect in the highway, for which, if injury results, an action will lie.

It is quite immaterial, therefore, whether the statute of 1877 was repealed by the act of 1881, since the act of 1879 imposed the duty upon the defendant to keep its road in a condition reasonably safe and fit for travel.

I have said that the Legislature evidently intended to characterize public highways along the banks of lakes, rivers, and other water-courses, in which the worked part is less than 35 feet wide, as unsafe for travel, without a railing or fence; and in this case, as before stated, the evidence is that defendant's road was less than that width at the place where the accident occurred, and it is conceded that defendant had erected no railing or fence at that point.

But, in the absence of the statute, the duty was imposed upon the defendant, by the facts and circumstances of the case, to keep its highway in a condition reasonably safe and fit for the public travel. The defendant was the recipient of a valuable franchise. The highway was in its exclusive control, and it had the right of exacting from every person traveling with animals or vehicles over its road the toll or tribute authorized by its charter. Under such circumstances the defendant was required, by its relations to the public, or that portion traveling over its road, to exercise due regard and caution for their safety, and to use reasonable safeguards for their protection. It was upon this principle that the defendant was held to be liable for neglecting to provide such safeguards to protect the traveling public in *Goodale v. Portage Lake Bridge Co.*, 55 Mich. 413.

Nor is it relieved from this duty by the terms of its charter. That requires that it shall construct, maintain, and keep

its roadway, 16 feet in width, in good repair, and fit for travel. But its charter nowhere relieves the company from protecting the traveling public against obvious dangers from embankments such as the evidence discloses to have existed at the place of the accident in this case.

The statute has imposed no new duty in this respect. It stands confessed, then, that the defendant had neglected a duty imposed alike by statute and by its relations to the public, and the court should have instructed the jury that this element of the plaintiff's case had been made out upon the conceded or undisputed facts.

But it does not follow that the plaintiff was entitled to recover. She must further show that the death of her husband was the direct consequence of such neglect of defendant's duty, and further that her husband, by his own act, carelessness, or omission to exercise due care, did not contribute to the injury complained of. In our former opinion we said that the jury should have been left to determine what caution was exercised by the plaintiff's husband, under proper instructions from the court.

We are still of opinion that there was evidence which it was proper for the court to submit to the jury, from which to determine whether the death of Carver resulted from the defendant's negligence as its efficient cause, and whether, if so, he contributed to bring about that result by his own negligence or want of care. The court took the case from the jury, and directed a verdict for the defendant, but for what reason does not appear.

Counsel for defendant seems disposed to criticise some of the recent decisions of this Court as a departure from what, for a long time, has been the established doctrine upon the question of negligence, and the duty of the trial court in such cases, and requested the Court to lay down some definite and fixed rule by which we would be governed upon this question. While we are not aware of any departure from the established doctrine as enunciated in the former decisions of this Court, we may remark that each case must depend upon its own facts and circumstances, which often

are unlike any which has preceded it; and nothing but general principles can be laid down, and the particular case may or may not fall within, and call for the application of, those principles, according to the varying circumstances of the case as developed by the testimony.

The general principle is well expressed by Lord Blackburn in the case of *Metropolitan Ry. Co. v. Jackson*, 3 L. R. App. Cases, 193. He says:

" It is not, however, in many cases, practicable completely to sever the law from the facts, but it has always been considered a question of law, to be determined by the judge, subject of course to review, whether there is evidence which, if it is believed, and the counter evidence not believed, would establish the facts in controversy. It is for the jury to say whether and how far the evidence is to be believed. And if the facts as to which evidence is given are such that from them a further inference of fact may legitimately be drawn, it is for the jury to say whether that inference is to be drawn or not. But it is for the judge to determine, subject to review, as matter of law, whether, from those facts, that further inference may legitimately be drawn."

And Lord Cairns, in the same case, expresses the principle more tersely thus:

" The judge has a certain duty to perform, and the jury another and different duty. The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether, from those facts, when submitted to them, negligence ought to be inferred."

Again, the same rule is expressed in different language by Mr. Justice Willes in *Ryder v. Wombwell*, L. R. 4 Exch. 38. He says:

" There is, in every case, a preliminary question, which is one of law, viz., whether there is any evidence on which the jury could properly find the verdict for the party on whom the *onus* of proof lies. If there is not, the judge ought to withdraw the question from the jury, and direct a nonsuit if the *onus* is on the plaintiff, or direct a verdict for the plaintiff if the *onus* is on the defendant."

The rule above stated may be considered as that now

established in the English courts. · The same rule obtains in Wisconsin (*Kaples v. Orth*, 61 Wis. 533; *Townley v. Chicago, M. & St. P. Ry. Co.*, 53 Id. 633; *Hill v. Fond' du Lac*, 56 Id. 246; *Nelson v. Chicago, M. & St. P. Ry. Co.*, 60 Id. 320; *Leavitt v. Chicago & N. W. Ry. Co.*, 64 Id. 228); and in Minnesota (*Abbett v. Chicago, M. & St. P. Ry. Co.*, 30 Minn. 483); and in New York (*Schwier v. New York Cent., etc., R. Co.*, 90 N. Y. 558).

It is also the rule in Iowa (*Whitsett v. Chicago, R. I. & P. Ry. Co.*, 67 Iowa, 150); and in Nebraska (*Johnson v. Missouri Pac. R. Co.*, 18 Neb. 690).

It is also the rule in our own courts: *Detroit & M. R. R. Co. v. Van Steinburg*, 17 Mich. 99; *Lake Shore & M. S. R. R. Co. v. Miller*, 25 Id. 295; *Le Baron v. Joslin*, 41 Id. 313; *Hassenyer v. Michigan Cent. R. R. Co.*, 48 Id. 205; *Mitchell v. Chicago & G. T. Ry. Co.*, 51 Id. 238; *Abernethy v. Van Buren Tp.*, 52 Id. 383.; *Dickinson v. Port Huron, etc., Ry. Co.*, 53 Id. 43; *Alpern v. Churchill*, Id. 607; *Lewis v. Flint & P. M. Ry. Co.*, 54 Id. 55; *Viets v. Toledo, A. A. & G. T. Ry. Co.*, 55 Id. 120; *Guggenheim v. Lake Shore, etc., Ry. Co.*, 57 Id. 488; *Lowell v. Watertown*, 58 Id. 568; *Cook v. Johnston*, Id. 437; *Rhoades v. Chicago & G. T. Ry. Co.*, Id. 263; *Crosby v. Detroit, G. H. & M. Ry. Co.*, Id. 458; *Mynning v. Detroit, L. & N. R. R. Co.*, 59 Id. 257; *Sheldon v. Flint & P. M. R. R. Co.*, Id. 172; *Hutchins v. Priestly Exp., etc., Co.*, 61 Id. 252; *Smith v. Peninsular Car Works*, 60 Id. 501; *Kendrick v. Towle*, Id. 363; *Potter v. Moran*, 61 Id. 60.

The difficulty is not in the rule, but in the application of it to the facts of the particular case. The testimony is often of such a nature that the trial judge is greatly embarrassed to determine whether any facts have been established by the evidence from which negligence may be reasonably inferred. In all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution and instructions, to determine whether, from the facts as they shall find them established by the evidence, negligence ought to be inferred.

In determining the preliminary question of law, it is not

the province of the court to pass upon the weight of the evidence, for the sufficiency and weight of evidence, and the effect to be given thereto, is a question exclusively for the jury; and it follows that it is only where there is no legal evidence which, if believed, will establish a fact material to the plaintiff's case, that the trial judge can take the case from the jury.

Some of the facts which tended to show negligence were mentioned in our former opinion, and it is unnecessary to recapitulate them here. They were such as to raise inferences which might be drawn—we do not say they should be drawn—by the jury that the injury to and death of Carver were in consequence of the neglect of defendant to erect a fence or barrier along the bank of the river where the horse went down, and that he was in the exercise of due care himself at the time; although the jury might, with propriety, determine, from the evidence in this record, that it ought not to be inferred from the evidence, taken as a whole, that he was himself in the exercise of due care and caution.

The record, as made, does not require us to pass upon the question whether other instances of persons meeting with similar accidents at this point, though not ending fatally, were admissible, and we do not determine that question.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.