JOSEPH A. QUIBELL, Respondent *v.* UNION PACIFIC RAILWAY COMPANY, Appellant.

MASTER AND SERVANT.—NEGLIGENCE.—PROVINCE OF JURY.—The question of negligence is generally one of mixed law and fact and seldom exclusively one of fact, and jurors pass upon the question of negligence only where there is some evidence to prove it. The relevancy and admissibility of evidence tending to prove negligence, and whether there is any such evidence, is not a question of fact for the jury, but a question of law for the court.

ID.—ID.—CONTRIBUTORY NEGLIGENCE.—A laborer employed to load cars and sort coal at night at the defendant's coal-chutes, who has been so employed for several nights and is familiar with the premises, knowing the location of the chutes and being used to moving the cars, where there is sufficient light and where the coal chutes are constructed and placed in a reasonably safe and prudent manner, cannot recover for a personal injury, suffered by him from being caught between a car, being moved by himself and a fellow servant, and a coal chute, when he could have seen the coal chute by looking in the exercise of ordinary prudence.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Mr. Parley L. Williams,* for the appellant.

*Messrs. Kimball and Allison,* for the respondent.

MINER, J.:

This is an action by the respondent for damages for personal injuries received while in the employ of the appellant as a laborer at a coal mine, owned and operated by defendant, situated at Almy, in the state of Wyo-

ming; the injury occurring, as alleged, on the 6th day of December, 1887. The respondent was working during the night, and the cause of action is based upon the alleged negligence of the appellant in neglecting to provide sufficient lights where respondent was working to enable him to perform his service safely, and in carelessly erecting and maintaining a screen and chute by which coal was discharged from a high trestle into railway cars, the negligence in that regard, as alleged, existing in the fact that the said screen and chute were so constructed and maintained as to be so near the top of the railway cars that there was not sufficient space for the body of the plaintiff to pass between the top of said cars and said chute. The situation and surroundings of the place were, in brief, that the coal mine was operated by means of an inclined shaft; that cars of coal were drawn up this inclined shaft and onto the trestle, which was constructed over the railway track of the defendant company; that from this trestle the coal brought up in the cars from the mine was dumped into railroad cars standing on the track below, being poured down over the screen through which the fine coal or slack passed, the larger or lump coal being delivered into the railway cars on one track, and the slack thus screened being caught in the slack chute, and conveyed to other railway cars situated upon another track parallel to the one in which the lump coal was dumped. These screens were constructed of iron or steel rods, and the chute, which caught the screenings, of iron or steel sheets. These were permanent structures from three to six feet in depth, and firmly placed in position, and from their nature capable of being seen or observed wherever there was sufficient light for the men to proceed about their work.

By the testimony on behalf of the respondent, which

consisted of his own evidence and that of his fellow-laborer, Joseph Brown, it appeared the respondent and Brown were employed to work during nights; that they began work about the 1st of December, and had worked only five or six nights at the time of the accident. They were working on the outside, either on top of this trestle or in placing railway cars in proper position, underneath the chutes, to be filled with coal and slack; to pick out the rock from among the coal as it was delivered into the cars from these chutes; and to do whatever work was necessary outside of the mine, and in the vicinity of this dump and these chutes. Respondent and Brown were fellow-laborers, and had worked in coal mines before, as shown by their evidence; and in the actual execution of the work assigned them the respondent was engaged chiefly in picking the rock out of the coal as it was delivered into the railway cars, and Brown in removing these cars, as required, along the track for the purpose of loading them. This division of work, however, was one made by these two parties themselves, and merely as a matter of convenience between them, and not by the directions of the company. In the course of this work Brown usually had a lamp with him, which he carried in his hand in moving about from place to place, while the plaintiff did not use a lamp, as, in picking out the lumps of coal, he could not handle it, but was enabled to do his work by a lamp hanging upon the wall or post of the trestle supporting these chutes or mine tracks over which the coal was dumped from above. There were also some fires on the ground for the purpose of giving light in that locality, and they were kept in open grates or fire baskets, 30 to 40 feet from the track. These fires were to be kept up by the workmen themselves, and if they were not made to burn brightly it was because of

their own neglect and forgetfulness. This fire-light in question was obstructed in places by the posts or timbers intervening.

No one of the company's managers were present on the night of the accident. The respondent testifies that he could not have taken care of a lamp, and could not have used one very well in his business; that the lights provided were adequate to enable him to select the stone from the coal properly in pursuing his business; that he made no complaint on account of the insufficiency of the lights furnished by the company; that the conditions as to light were the same on the night of the accident as they had been on previous nights. Under these circumstances of employment, to do work on all these railway tracks as occasion might require, and with these means of seeing how to proceed with it, on the occasion of the accident he was called by Brown to come and help him lift up and hold an end-gate on the railroad car which Brown was placing under the slack chute on the track along-side of the one on which the respondent was working and taking out rock at the time he was called. This chute was so arranged as to permit the railway car to pass underneath it, and it extended some two feet just over and on the inside of the side of the railway car, leaving from three to four feet on the other side of the box of the car not occupied or taken up or covered by this chute. In response to Brown's request, the respondent went to help him lift up the end-gate on this car, and then Brown went to the brake to let the car down, it being on a slight descent, and while holding up this end-gate, which was frosty, and the car was being so moved, the respondent was caught between the slack chute and the top of the car, his position being so that he was facing in an opposite direction from the chute. He

could have seen it if he had looked, but he did not look. Brown had his lamp with him in his hand.

When Brown went to attend to the brake he faced away from Quibell, and just as he stopped the end-gate dropped down, and his attention was called to Quibell when he found he was hurt. He heard Quibell cry out, and when he looked round he could see him as his body lay there in the car, and he could also see the chute. There was light enough there to see the whole situation. Quibell held up the gate of the car with his back to the chute, and the movement of the car carried him near to it, and at length caught him between the chute and the top of the car. There was no lack of light to proceed about the work. On the track, parallel and next to it, he was, at the time he was called, selecting rock from the coal by means of light furnished in the usual course of his business. On having his attention called to the accident just as he was stopping. the car, Brown looked around at the call of Quibell, and saw where and how he lay in the car; could see the chute, and, from the lamp either that he had himself in his hand or sitting down near him at the time he was attending the brake, or from the other light furnished, he could take in the whole situation. Plaintiff was 43 years old at the time of the accident, and was then receiving $2.25 per day. The result of the accident was the breaking of the left arm above the wrist and below the elbow, which left the arm useless. He had not worked under this particular chute before that day, but had worked above and around them for five days. No one had informed him of the condition of this particular chute. The evidence also discloses that the respondent, when injured, declined to accept the services of a surgeon tendered him by the defendant for the purpose of dressing his wounds, but put himself under the treatment of a man who was a

miner, and not in any sense a surgeon or physician. The
evidence of Dr. Perkins, who was there and saw him after
the injury, is that there was nothing in the nature of the
fracture of the respondent's arm that made it probable,
taking into consideration his age and physical condition,
that he should not have recovered, if not completely,
substantially, from the injury; and that the chief damage
resulted from the permanent disability which was caused
by respondent's negligence in not obtaining proper surgi-
cal treatment, and not as a necessary or probable result
of the original injury. At the close of the plaintiff's
case defendant moved for a nonsuit, on the ground that
there was no evidence upon which the jury could render
a verdict in favor of the plaintiff, which was denied by
the court, and the defendant introduced evidence. At
the close of the case, and after the charge of the court,
the jury brought in a verdict in favor of the plaintiff
for the sum of $2,500.

The appellant assigns the following error as grounds
for a new trial, among others, to-wit: Insufficiency of the
evidence to justify the verdict, and that it is against the
law in this case, in this, to-wit: The errors of law occur-
ring at the trial, and excepted to by the defendant,
among others is: The court erred in overruling the defend-
ant's motion for a judgment of nonsuit, made at the
close of the plaintiff's testimony.

The main question presented in this case is whether
there was any evidence of negligence or want of proper
care on the part of the defendant in failing to provide
materials, machinery, suitable light, and other means by
which the plaintiff could perform the work for which he
was employed, safe and adequate for his use, and whether
the same was kept in order and fit for use, so as not to
unnecessarily expose him to danger. Negligence, as I
understand it, consists in the want of that reasonable

care which would be exercised by a person of ordinary prudence under all the circumstances, in view of the probable danger of injury; and the principles of law involved in the consideration of the questions raised are really those relating to the duty of the defendant towards the plaintiff in the capacity in which he was employed. Those have been so frequently under consideration that a simple statement of them is all that may be required. They require the company to use due care to provide materials, machinery, (and in this case suitable light), and other means by which the plaintiff was to perform the work for which he was employed, safe and adequate for his use, and to keep them in order and fit for use, so as not to unnecessarily expose him to danger; and, when the company has done this, the plaintiff assumed the risks and danger incident to his employment in the business or work in which he was employed, and the compensation is presumed sufficient to cover the risk.

Included in the risks assumed by the plaintiff in this case were those originating from the negligent acts and omission of his companions, Brown, a fellow-servant in the employ of the company, with whom he was working under the joint directions of both, and without the supervision of a master; and while it was the duty of the company to use reasonable care in all respects, and to furnish its employés suitable and proper light for them to pursue the work assigned to them without incurring danger or injury in coming in contact with objects to be met with in their usual and necessary avocations, and, without which light, danger would be imminent, still, if such sufficient light was not furnished, and injury in consequence occurred to the plaintiff when he had the same or equal means of knowledge with the defendant of such absence of proper light, and did not protest against the negligence now complained of, but continued in the

employ of the company and worked without sufficient light, with knowledge, or with the means of knowledge, easily within his reach, which he could obtain by the reasonable exercise of his senses and sight, of the danger, he ought not to recover. It is generally held, and is, I think, the correct doctrine, that it is incumbent on the plaintiff to show that the injury of which he complains was caused by the negligence of the defendant, and that it did not arise from his own negligence or want of care. He cannot recover if he was negligent, because it cannot be said that defendant's negligence caused an injury which could not have happened but for his own want of care. *Lane* v. *Crombie*, 12 Pick. 176.

Where, therefore, from the whole evidence on which the case rests, it appears that the plaintiff was wanting in prudence and care, or that he directly or proximately contributed to cause the injury he received, or that by the use of ordinary care and prudence he could have avoided the injury, the court, it is held, may rightfully instruct the jury, as a matter of law, that the plaintiff could not recover, even though the defendant was guilty of negligence. And while the court should not invade the province of the jury, and pass upon the weight of the evidence, yet, where the jury have made a clear and unquestionable mistake of fact, or where the passion or prejudice of the jury have so clearly controlled their mind as to find a verdict where there is no evidence upon which to base it, the appellate court has the right, and it is its duty, to rectify the wrong done, and to set aside the judgment upon which such erroneous judgment is based, and grant a new trial. Where there is no conflict of evidence whatever upon the questions of fact presented, and such evidence falls short of making a *prima facie* case for the plaintiff, it is then the duty of the trial

court to take the case from the jury. The case, however, should be a clear one to justify the court in exercising this responsibility; but where the necessity exists the court should not shrink from the responsibility. The question of negligence, diligence, or reasonable care is one of mixed law and fact, and seldom exclusively one of fact. Jurors may act upon a question only when there is some evidence tending to prove it. The relevancy and admissibility of evidence, and the tendency to prove diligence or negligence, or whether there be any such evidence, is a question of law to be determined by the court; and where the facts are found or admitted, or where there is no dispute or question as to what the facts are, if they be such that all reasonable men would be likely to draw from them the same inference, or in a case where there is no evidence tending to prove a case of negligence, the question is one of law. *Railroad Co.* v. *Miller,* 25 Mich. 274; *Fernandez* v. *Railway Co.,* 52 Cal. 45; *Bowers* v. *Railroad Co.,* 4 Utah, 224, 7 Pac. Rep. 251.

While there may be some difficulties in the way of this rule in the same cases, yet the courts are held and bound judicially to know that absence of due care is not due care, and that no care is not due or reasonable care; that the absence of proof of negligence does not prove negligence. Jurors should act upon the question of diligence, negligence, and reasonable care when there is evidence in the case to prove it. If there be no evidence, there is nothing before them upon which to find negligence, diligence or care.

The question of the relevancy of evidence, and its tendency to prove negligence, diligence or want of it, and whether there be any evidence, is not a question for the jury, but a question for the court, and it must be decided by the court, and not by the jury. This being the

case, we are bound to determine, in the present case, whether there was any evidence in this case to prove negligence on the part of the defendant.

It has been held that if at the time the plaintiff closed his proofs there was no evidence upon the material point upon which the plaintiff had the burden of proof, or if it affirmatively appeared, by his own showing, that he had no cause of action, upon the undisputed testimony introduced by him, the defendant was entitled at that stage of the case to a direction from the court to the jury to find a verdict for the defendant. Equally so, under the same circumstances, was the defendant entitled to such direction after all the evidence was introduced. It is the duty of the judge, when asked to do so, before sending the case to the jury, as a preliminary question of law, to decide whether there is any evidence upon which the jury could properly find a verdict for the party on whom the *onus* of proof lies; and, if there is not, he ought to withdraw it from the jury. *Railroad Co.* v. *Miller*, 25 Mich. 274; *Conely* v. *McDonald*, 40 Mich. 158; *Carver* v. *Plank Road Co.*, 61 Mich. 584, 28 N. W. Rep. 721.

On looking into the evidence, it will be seen that the chute and screens were properly and permanently constructed and entirely suitable for the use for which they were built; that the chute extended about two feet over the side of the car, and was for the purpose of allowing the coal to drop into the car from above, and could in no way interfere with the safety of the plaintiff had he used reasonable care, and looked to see where he was going. Instead of doing so, he turned his back to the chute and the lamp, and was carried onto and under the chute by the moving car being drawn by his companion, which he knew was moving in the direction of the chute

for the very purpose of receiving coal into the car from that chute. The defendant was not negligent in so constructing the chute as to be useful and suitable in the business in which it was used. It was a large, stable, and substantial structure, easy to be seen, which was located, as he must have known, on the very track over which the car was passing, and from which the coal was to be emptied into the car. Nor can we find from the evidence a negligent absence of proper light. It was the same light the plaintiff had been in the habit of working by and using for several days without objection or complaint. From it he was able to pick out stone from the coal on this and previous nights. His companion, Brown, could and did see all the surroundings at the time of the accident. The lamp was on a post near by, Brown's lamp was near him, and open grate fires were burning thirty or forty feet away, left on purpose to light the premises; and it was the duty of these men, including the plaintiff, to keep them burning on this occasion, and if they were allowed to go out it was through the plaintiff's and his co-laborer's negligence.

The plaintiff's employment was in, around, and about these chutes; he had been there five days, and long enough to see the surroundings. He could have seen the chute if he had looked, but he did not look. He knew, or is chargeable with knowledge, of the situation of the tracks, the condition of the trestle, the existence of the chutes and screens, and the use they were put to, but on this occasion he forgot to look; he did not think of the chute at that time; did not look in that direction, but was facing away from it, and also from his companion. He was simply absent minded, and did not use his eyes, his recollection or his reason. He was not using that reasonable care which would be exercised by a reasonable

person of ordinary prudence, under all the existing circumstances, and in view of the probable danger. It was an accident resulting from the character of the work in which he was employed, and if it resulted from anybody's fault, it was from the plaintiff's lack of attention to his surroundings, which must have been known to him at the time, and which he could have avoided by the use of ordinary care. Any other rule in this case would render the defendant an insurer of the lives and safety of its employes. Without considering the other questions involved in the case, our conclusions, from the whole testimony bearing upon the question of negligence, are that there was no evidence showing negligence of the defendant in the case to justify the verdict given for the plaintiff, and that the judgment below should be set aside and a new trial granted, with the costs of this Court; the costs in the court below to abide the result.

ZANE, C. J., and ANDERSON, J., and BLACKBURN, J., concurred.