RAMSAY *v.* C. K. EDDY & SONS.

PERSONAL INJURIES — OBVIOUS DANGER — CONTRIBUTORY NEGLIGENCE.

> A brakeman who, while engaged in the daytime in switching cars in the yard of a manufacturing company, mounted a side ladder of a moving car a few feet from a pile of lumber out of which several boards projected towards the track, was guilty of contributory negligence, precluding a recovery for injuries sustained by being caught between the car and the projecting boards; it being apparent, from the evidence, that he would have seen the boards had he looked.   MOORE, J., dissenting.

Error to Saginaw; Wilber, J.   Submitted October 7, 1898.   Decided March 6, 1900.

Case by Clark R. Ramsay against C. K. Eddy & Sons, a corporation, for personal injuries.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Humphrey & Grant*, for appellant.

*Crane & Crane* and *James H. Davitt*, for appellee.

MOORE, J. (*dissenting*).    Plaintiff, a brakeman upon a freight train, recovered judgment against defendant for personal injuries received by him while at work in defendant's yard.    From this judgment defendant appeals.

A reference to the annexed plat will help to understand the situation.    The railroad tracks indicated upon the plat

are in the yard owned by the defendant.    Plaintiff was in the employ of the railroad company, which was, at the request of the defendant, putting a furniture car on the track for the use of defendant.    The plaintiff was an experienced brakeman and switchman, but was not familiar with this yard.    The locomotive, a flat car, and the furniture car were backed from the south.    The brakeman threw switch 6, and, as the furniture car passed him, he

climbed upon a ladder at the side, and while there was caught by three or four boards which projected six or eight inches beyond the rest of a pile of lumber which was near the railroad, and was injured. It is the claim of the defendant that it was the duty of the plaintiff to look and see whether he could pass the lumber safely before climbing upon the ladder, and that he did look, and thought he could pass the lumber safely, when in fact he could not; that he assumed the risk, and that he cannot now complain,—citing *Grandorf* v. *Railway Co.*, 113 Mich. 496 (71 N. W. 844), *Illick* v. *Railroad Co.*, 67 Mich. 636 (35 N. W. 708), and many other cases. In all of the cases cited, the danger was obvious. It is the claim of the plaintiff that the danger in this case was not apparent; that he looked at the lumber pile, and there was nothing in its appearance to indicate he could not pass it safely; that the lumber had been piled more than a year; that the projecting boards were weather-stained, and were shaded by the boards higher up in the pile to the north and west of them, so that, looking from where he was, the projections were not apparent, and the pile appeared to be one that could be passed safely. There was testimony in addition to his own which tended to sustain this claim. He also claimed there was a slight curve in the track at this point, and that, had he been upon the ladder upon the other side of the car, he could not have been seen by the engineer; and that further down the track were an overhead pipe and tramway, which crossed the track, and would require him to get down from the car; that good railroading required he should be where he was that he might warn persons who were crossing the roads in the yard of the approaching train, and that he might signal the engineer. It was also the claim of defendant that plaintiff was guilty of contributory negligence, and a verdict should have been directed in favor of defendant.

The court charged the jury as follows:

"The plaintiff, with other employés of the F. & P. M. Railroad, was, at the time of the accident, upon the

premises of the defendant, at its request, to place this car in position. Under such circumstances it was the duty of the defendant to see that its premises were in a reasonably safe condition for doing the work. On the other hand, it was the duty of the plaintiff, while in the employ of the railroad company, to exercise due and reasonable care in avoiding danger; and the degree of care must be in proportion to the nature of the danger to be encountered, and the extent of the risk. Reasonable care in such a case required the plaintiff to be diligent in the use of any and all appliances and facilities necessary in ascertaining and avoiding danger. Anything less than this must be regarded as negligence on the part of the plaintiff; and, whenever such negligence contributes to produce the injury complained of, the plaintiff cannot recover for such injury. In order for the plaintiff to recover for such injury, it is just as essential that he show himself without negligence at the time of the happening of the accident as it is for him to show that the defendant was negligent; and the burden of proof is upon him to establish both propositions.

"Was the plaintiff negligent in not seeing the projecting boards that caused the injury? If so, then he cannot recover. Did he exercise care and caution in ascertaining whether it was safe for him to ride upon the car past this pile of lumber, that he was in duty bound to exercise under the instructions I have given you? If he did not, then your verdict must be for the defendant, irrespective of what you find the other facts to be. The defendant claims that the projecting boards were in plain view; that, if the plaintiff had looked, he would have seen them; that there was nothing deceptive in their appearance or location. If this is true, he should have discovered them, and avoided the danger. Defendant also claims that this pile of lumber was so near the track that the plaintiff could not safely ride past it upon the side of the car, irrespective of these projecting boards; and they claim, too, that, if he had given it proper attention, he would have seen that this was true. If this is the fact, and the plaintiff concluded to take his chances, seeing just what the situation was, then he is not entitled to recover, even if the projecting boards were in a position where he could not readily discover them, and did not see them. If you find that the plaintiff did not exercise reasonable care in avoiding this danger, then you would have no occasion to consider

the case further, and your verdict would be for the defendant. But, if you should find in favor of the plaintiff upon this proposition, you should then determine whether or not the premises of the defendant were in a reasonably safe condition for the plaintiff to do his work.

"It is an admitted fact in the case that the lumber was piled by one of the employés of the defendant. The knowledge of the employé as to the manner of piling would be the knowledge of the defendant. Was it in reasonably safe condition? I submit this as a question of fact for you to find. Take into consideration all of the facts bearing upon it,—its closeness to the railroad tracks and switch; the manner in which the switching is usually done at that place; the position of the switchman on the car, if he rides; also whether the defect in the piling was so open and notorious as of itself to constitute a warning to the switchman not to attempt to ride past it upon the side of the car. If you should find that the defendant was negligent in this, and also that the plaintiff himself was not guilty of negligence that contributed to the injury, then you should consider the plaintiff's injuries, and the damages he is entitled to, bearing in mind that your verdict must be based upon the view, not of punishing the defendant, but solely upon compensating the plaintiff for the injuries he sustained."

There was evidence tending to show that plaintiff exercised due and reasonable care, and that no negligence of his contributed to the injury. The evidence was disputed by defendant.

It was the duty of Mr. Ramsay to exercise reasonable care and diligence to ascertain whether it was safe for him to do what he did or not. Indeed, he had the greatest incentive to caution, for he was a man of sufficient sense to know that, if there was not sufficient space between the car and the lumber for him to pass, he was in danger of getting seriously hurt. I do not think the court can say, or that it ought to say, that, under the showing made in this case, he did not exercise proper care. That is a question within the province of the jury. *Continental Improvement Co.* v. *Stead*, 95 U. S. 161. The record shows the foundations of this lumber pile were a proper distance from the track, and, if the lumber had

been properly piled, it would not have been dangerous. The danger came because three boards projected beyond the body of the pile. It was the claim of the plaintiff that the northwest corner of the pile did not recede from the track, as did the remaining portion of the pile; that this side of the pile was ragged and uneven in appearance; and that all of the pile, including these boards, was weather-stained, so it was not easy to discern that these boards projected farther than the others; and that the boards were a concealed danger. The plaintiff testified that, before going upon the car, he looked, and did not see the boards which projected; that he saw no danger. Mr. Hunter, a switchman, said there was trouble in seeing the boards. Mr. Grobe testified that he observed the lumber the next day, from the cab of the engine, at the switch, and could see no danger, and it was not until his attention was called to the dangerous boards that the danger became apparent. Mr. Egger, the engineer, got the signal from the plaintiff to start the train; saw him get upon the car, and saw the pile of lumber, and did not suppose he was in any danger until he was struck by the boards. The boards were cut off the next day after the injury. In speaking of the rule applicable to such cases as this, in *Carver* v. *Plank-Road Co.*, 61 Mich. 593 (28 N. W. 721), it is said:

"The difficulty is not in the rule, but in the application of it to the facts of the particular case. The testimony is often of such a nature that the trial judge is greatly embarrassed to determine whether any facts have been established by the evidence from which negligence may be reasonably inferred. In all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution and instructions, to determine whether, from the facts as they shall find them established by the evidence, negligence ought to be inferred. In determining the preliminary question of law, it is not the province of the court to pass upon the weight of the evidence, for the sufficiency and weight of evidence, and the effect to be given thereto, is a question exclusively for the jury; and it follows that it is only where there is no legal evidence, which,

if believed, will establish a fact material to the plaintiff's case, that the trial judge can take the case from the jury."

See, also, *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Engel* v. *Smith*, 82 Mich. 1 (46 N. W. 21, 21 Am. St. Rep. 549); *Sweet* v. *Railroad Co.*, 87 Mich. 559 (49 N. W. 882); *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592); *Woods* v. *Railway Co.*, 108 Mich. 396 (66 N. W. 328).

This is not like an accident at a highway crossing, where one has failed to see a locomotive and train,—large objects, which we may assume would be seen if the one whose duty it was to look had done so. Here the projecting boards were comparatively small. They were weather-stained,—a color which we all know is a difficult one to see. As long as a jury is allowed to judge of questions of fact, it is not the province of the court to say, under such circumstances as this record discloses, that, if the plaintiff had looked, he would have seen, and therefore is guilty of contributory negligence. The court cannot put itself in the place of the witnesses, and see the situation as they saw it. They gave their version of what they saw, and it was for the jury to say whether they correctly described the situation. The language used in *Texas, etc., R. Co.* v. *Gentry*, 163 U. S. 353 (16 Sup. Ct. 1104), is very pertinent in such a case as this:

"'The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable and prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.' *Grand Trunk R. Co.* v. *Ives*, 144 U. S. 408, 417 (12 Sup. Ct. 679)."

I do not think this case can be said to be a case for the application of the doctrine of assumed risks—*First*, because it does not appear from the evidence that plaintiff saw the projecting boards which caused the mischief; and, *second*, because there were no contract relations between the plaintiff and defendant. The liability, if any exists, does not grow out of the relationship of master and servant. It is the claim of the plaintiff that the car was placed in the yard of the defendant at its request, and for its benefit, as well as for the benefit of the railroad company, and that while performing that act he was injured. The duty of the defendant may be stated as follows:

"If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of his negligence." Whart. Neg. § 437.

This is the same language used in *Sweeny* v. *Railroad Co.*, 10 Allen, 368 (87 Am. Dec. 644), in which case the following language was also used:

"The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement, or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way

or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability, but if he, directly or by implication, induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use; and for a breach of this obligation he is liable in damages to a person injured thereby."

I think the case was carefully tried, and the judgment should be affirmed.

LONG, J. I am unable to agree with my Brother MOORE in this case. From the testimony of the plaintiff it is apparent that the danger was obvious. It was his duty to look, and see if the way was clear, before climbing upon the ladder upon the side of the car. If he had looked, he would have seen the projecting boards. He was asked:

"*Q.* If you had looked, you could have seen them?
"*A.* I did look.
"*Q.* And you say you could not see them?
"*A.* I did not see them.    *    *    *
"*Q.* What you wish the jury to believe is this: That, until you got hit with those boards, you couldn't see them, even if you had looked? Answer the question yes or no. [No answer.]
"*Q.* Do you want the jury to understand that you could not see those boards, if you looked, until they hit you?
"*A.* I did look, and I didn't see the boards until they hit me.
"*Q.* Now, I ask you if you could have seen them if you had looked?
"*A.* Well, I did look, and I did not see them.
"*Q.* Do you mean that you want the jury to understand that you could see better after the boards hit you than you did before?
"*A.* Why, I looked to see what had hit me; just how far they were, and why I hadn't seen them before.    *    *    *
"*Q.* And you had just as good an opportunity to see before you were hurt as you did afterwards?
"*A.* I should have thought so.
"*Q.* And before you were hit you didn't see the boards, and after you were hit you did see them?

"*A.* I saw them after they hit me, yes, sir. Most anybody would, getting rolled through a space of eight inches."

Plaintiff confesses that no one ordered him to get up on the side of the car where he was injured. He had charge of the train. He made the motions with his hands for the engineer to move it backward and forward. He possessed all his faculties, and was an experienced switchman. It was broad daylight; and the evidence is conclusive that, had he looked, he could have seen that it was dangerous to ride on the ladder by these boards. They were eight feet from the ground. The lumber had been piled in this position for more than a year prior to the accident, and cars had been hauled there many times. The railroad company had given the defendant no notice that the piles were in dangerous proximity to the railroad tracks. The foundations to the lumber piles had been there for several years. They were there when the railroad companies laid the tracks for the purpose of hauling out the product of the mill, and were placed there at the expense of the railroad companies. It cannot be said from the testimony that the plaintiff, who was within a few feet of these projecting boards,—boards 10 to 12 inches wide,— could not have seen them if he had looked. He was not called upon to act suddenly. He was in charge of the train. The danger was just as apparent to him as it could have been to anybody else. There was no question of fact for the jury to determine. Under the testimony of the plaintiff, the court should have directed the verdict for the defendant.

The judgment must be reversed. No new trial will be ordered.

MONTGOMERY, C. J., and GRANT, J., concurred with LONG, J.

HOOKER, J. I am of the opinion that contributory negligence upon the part of the plaintiff is conclusively shown by his own testimony. For that reason the judgment should be reversed, and no new trial ordered.