WRIGHT v. BIG RAPIDS DOOR & BLIND MANUFACTURING CO.

1. NEGLIGENCE—INDEPENDENT CONTRACTORS.

The owner of a sash and door factory is not liable for injuries received by a brakeman who was struck and thrown from a car by lumber piled too near the track, where such piling was under the control of one who had contracted with the owner of the factory to take the lumber as delivered from the cars, pile it, put it in the kiln and dry it, and use as much as he should need in the manufacture of doors, at so-much per door, for which purpose the lower floor of the factory was set apart to him.

2. SAME—RULE GOVERNING LIABILITY.

The important consideration in such cases is whether the act is one directed by the superior.   If the contractor is supervised or controlled by the superior, there may be a liability; but where the contract is for results alone, the contractor being independent and free from direction or restraint in the performance, the superior is not liable.

Error to Mecosta; Palmer, J.   Submitted April 6, 1900.
Decided May 15, 1900.

Case by Fred Wright against the Big Rapids Door &
Blind Manufacturing Company for personal injuries.
From a judgment for defendant on verdict directed by the
court, plaintiff brings error.   Affirmed.

*Charles A. Withey* (*Frank Dumon*, of counsel), for
appellant.                                    .

*M. Brown* (*A. B. Cogger*, of counsel), for appellee.

HOOKER, J.   The plaintiff, a brakeman of many years'
experience, was injured by being struck and thrown from
a freight car by a pile of lumber which stood near the
siding, on premises occupied, if not owned, by the defend-
ant, for the purpose.   The defendant owned a manufac-
turing plant, and had been for many years, and was at
the time, engaged in manufacturing doors, sash, blinds,
and molding.   It had entered into a contract with one
Falardeau, by which he was to take the lumber from the
cars, pile it, put it in the kiln and dry it, take it thence to
the mill and manufacture it into doors, and load them
upon cars, at an agreed price per door.   To do this, he
hired and paid the help, but used the premises of the de-
fendant.   The doors were manufactured upon the first
floor of defendant's factory, which appears to have been
under Falardeau's control.   The other floors were oper-
ated by the defendant, whose foreman had charge of
them.   The lumber used upon those floors was taken from
the piles made by Falardeau's men.   The circuit judge
directed a verdict for the defendant upon the ground that
the lumber was piled by an independent contractor, for
whose misconduct the defendant was not responsible.
The plaintiff alleges that this is the only error relied upon.
Counsel for the defendant contend that the ruling of the
court was correct, upon the ground stated, and for the
further reason that the proofs conclusively show that the

plaintiff was guilty of contributory negligence; citing *Ramsay* v. *C. K. Eddy & Sons*, 123 Mich. 158 (82 N. W. 127), and other cases. The plaintiff claims that the proofs show that Falardeau was not an independent contractor, and that, whether he was or not, the defendant is liable, because it retained the control, or right to control, of the entire premises.

An examination of the record shows that the defendant had control of, and itself carried on business at, the premises in controversy. Its factory was in charge of its foreman. It employed men to do work. It employed Falardeau to make doors "by the piece" in its factory; furnishing him a portion of the factory, and machinery, for the use of himself and his men. It purchased and owned all lumber that was brought upon the premises, and it contracted with Falardeau to put certain work upon it, viz., unloading, piling, transporting to the kiln, and drying it. He used what he needed for making doors, and the rest was used by the defendant for other purposes. The uncontradicted testimony shows that the lumber passed into his possession and control when the car arrived, and it was under his control until it was wanted for use. There is nothing to indicate that the defendant exercised, or had under his contract, the right to dictate how near the track it should be piled. The piling of the lumber was not under its control or supervision, so far as appears from the record. This being so, the defendant was no more chargeable for the negligence of Falardeau's men in piling the lumber than an owner of goods is for the negligence of a drayman in transporting them. It has been held in such cases that the relation of master and servant, as ordinarily understood, does not apply. *De Forrest* v. *Wright*, 2 Mich. 371; *Riedel* v. *Moran-Fitzsimons Co.*, 103 Mich. 262 (61 N. W. 509). Had one of Falardeau's men injured a passer-by, through carelessness, while engaged in unloading or piling the lumber, or in transporting or loading doors upon the car, the defendant would not be liable. As a rule, the law requires the negligent person to recom-

pense one who is injured as the result of his negligence, and masters are held liable for injuries resulting from acts of servants while performing acts for the masters while engaged in their service.    But one who can be said to be an independent contractor, over whom the other contracting party has not the right of supervision, direction, and control in the performance of his contract, is himself liable for his negligence and that of his employés, and the other contracting party is not.

Counsel for the plaintiff cite a number of cases which are said to limit this rule, but we think they will be found to rest upon another principle, viz., that the defendants owed duties which they could not avoid by contracting that another should perform the act in which the negligence occurred.    Many of these are cases where cities contracted for public improvements in the public highways, it being their duty to keep the streets in a reasonably safe condition.    Thus, in *City of Detroit* v. *Corey*, 9 Mich. 165 (80 Am. Dec. 78), it was held as to sewers:

"The city takes this power with the understanding that it shall be so executed as not unnecessarily to interfere with the rights of the public, and that all needful and proper measures shall be taken, in the execution of it, to guard against accidents to persons lawfully using the highways at the time.    The city is bound for the performance of these obligations, and cannot rid itself of their performance by executing the power through an agent."

Even this doctrine does not meet the approval of Mr Justice CAMPBELL.    9 Mich. 188.

Again, in *Darmstaetter* v. *Moynahan*, 27 Mich. 188, it was held that one who was acting under authority from the municipal authorities to incumber a street for the purpose of filling his ice-house could not shield himself from liability for injuries caused by unlawfully obstructing the street with fragments of ice, under an objection that his employé was a contractor, and alone liable.    The *Corey Case* was said to rule that case, and the liability was distinctly put upon the ground that, under the facts, the relation of principal and agent existed.

In *McWilliams* v. *Mills Co.*, 31 Mich. 274, the defendant had a franchise under which it operated a railway upon a public street.   The court held that it was charged, under its franchise, with seeing that the public was protected against, and that it was liable for, negligence in operating the road, though done under a contract by another person.   The court said :

"Under these circumstances, all persons using the track for such purposes used it as the agents of defendant, and defendant was liable for their conduct.   The relation of principal and agent or master and servant may exist between a corporation and an employer as well as between individuals; and the use of a special franchise, under the direction and for the purposes of its owner, can never be maintained, except as his act.   This we have held repeatedly in regard to railroad tracks.   It was so held in *Gardner* v. *Smith*, 7 Mich. 410 (74 Am. Dec. 722), and in *Bay City, etc., R. Co.* v. *Austin*, 21 Mich. 390; and the same principle was recognized in *Continental Improvement Co.* v. *Ives*, 30 Mich. 448, and *Grand Rapids, etc., R. Co.* v. *Southwick*, Id. 444."

In *Southwell* v. *City of Detroit*, 74 Mich. 438 (42 N. W. 118), the city was held liable for negligence of a paving company, upon the theory that it could not avoid its responsibility to protect the public.   Another case substantially on all fours with the *Southwell Case* is *Monje* v. *City of Grand Rapids*, 122 Mich. 645 (81 N. W. 574), where several authorities not cited will be found.   These cases turn upon a radically different rule, and do not support the proposition that one having a service to be done cannot avoid liability for the acts of an independent contractor to whom he lets the work.

The same principle is involved in *Hawver* v. *Whalen*, 14 L. R. A. 828 (49 Ohio St. 69, 29 N. E. 1049).   In the copious notes to this case will be found many cases to the same effect.   See, also, *Bailey* v. *Mayor, etc., of New York*, 3 Hill, 543 (38 Am. Dec. 669), where it was said:

"If we are not mistaken in that conclusion, and they are to be regarded as a private company, like any other body of men upon whom special franchises have been con-

ferred for their own private advantage,—such as banking and railroad corporations,—then the appointment of the agents by the State did not make them less the agents of the defendants. The appointment in this way is but one of the conditions upon which the charter was granted, and stands on the footing of any other condition to be found in the grant subject to which it has been accepted. By accepting the charter, the defendants thereby adopted the commissioners as their own agents to carry on the work. The acceptance was entirely voluntary, for the State could not enforce the grant upon the defendants against their will. This would be so upon general principles (Ang. & A. Corp. 46–50, and cases there cited), but here the charter itself left it optional with the common council of the city to accept or not (Laws 1834, chap. 256, § 7). The undertaking of the work was made to depend upon the approval of the plan of the commissioners, which necessarily involved the right to adopt or reject the work itself altogether, if they disliked the system prescribed by the legislature. The approval having taken place, this, together with the subsequent measures of the common council instructing the commissioners to proceed in the execution of the work, constituted them the agents of the defendants,—as effectually so as if the latter had originally appointed them. The act of adoption in the one case was as free and voluntary as the appointment in the other."

Counsel make the further point that:

"Where the superior is in possession of fixed property, as real estate, upon which some service is to be performed, he is liable for the negligence of independent contractors; for in such cases the use of the property is confined by law to himself, and he should take care that that use and management works no injury to others, and, of consequence, that he brings no persons there who do any mischief to others."

This language is taken from a *dictum* of Mr. Justice MARTIN in *Moore* v. *Sanborne*, 2 Mich. 529 (59 Am. Dec. 209). In this connection we refer to *De Forrest* v. *Wright*, 2 Mich. 371, where the proposition is repudiated in the following language:

"A distinction was adverted to at the bar, in the argument of this case, as existing between fixed real property

and personal chattels; and such a distinction seems for awhile to have been recognized by the English judges. *Bush* v. *Steinman*, 1 Bos. & P. 404; *Laugher* v. *Pointer*, 5 Barn. & C. 547; *Quarman* v. *Burnett*, 6 Mees. & W. 499. That distinction, however, has ceased to exist. It is no longer the doctrine of the English courts, unless the act complained of amounts to a continuing nuisance. *Earle* v. *Hall*, 2 Metc. (Mass.) 353; *Reedie* v. *Railway Co.* and *Hobbit* v. *Same*, 4 Exch. 244, 254."

Some Massachusetts cases are cited in support of this doctrine. In *Earle* v. *Hall*, 2 Metc. (Mass.) 353, it was held:

"The general owner of real estate is not answerable for acts of carelessness, negligence, and mismanagement committed upon or near his premises, to the injury of others, if the conduct of the business which causes the injury is not on his account, nor at his expense, nor under his orders or efficient control. Where A. agreed to convey land to B., and B. agreed to build a house thereon and pay for the land, and, while the agreement was in force, B., in preparing to build the house on his own sole account, by workmen employed by himself alone, undermined the wall of the adjoining house of C., whereby it was injured, it was held that A. was not answerable for this injury, although the title to the said land remained in him at the time when the injury was committed."

It is not, therefore, an authority supporting the rule contended for.

The case of *Stone* v. *Codman*, 15 Pick. 297, was where an adjoining proprietor brought an action for an injury resulting from the negligent making of a drain upon defendant's land, thereby letting water into his cellar. This case is not in point, and more closely resembles the first class cited. The landowner always owes a duty to so use his land as not to injure an adjoining proprietor, as by setting fires, draining land, etc., and he cannot avoid it by hiring another to set fires or lay drains. *Robbins* v. *Chicago City*, 4 Wall. 657.

*Hilliard* v. *Richardson*, 3 Gray, 349 (63 Am. Dec. 743), is another case cited. There a carpenter, who had contracted to build a house upon defendant's land, ob-

structed the highway, causing an injury. The landowner was held not liable. The authorities were reviewed in that case, and *Bush* v. *Steinman*, 1 Bos. & P. 404, cited by counsel in this case, was repudiated. The trial court had instructed the jury that "the act of laying and leaving the boards in the highway by Shaw must, for the purposes of this action, be deemed the act of the defendant," and that, "as the boards at which it was alleged the horse took fright were procured by Shaw, to be used, in whole or in part, in performance and execution of the written contract between him and the defendant, and were materials necessary therefor, the defendant was responsible for the acts of Shaw in placing the boards in the highway and suffering them to remain there, and that his liability in relation thereto was in all respects the same as the liability of Shaw." The appellate court said:

"We have thus, at the risk of tediousness, examined the case at bar as one of authority and precedent. The clear weight and preponderance of the authorities at common law is against the rule given to the jury. The rule of the civil law seems to have limited the liability to him who stood in the relation of *paterfamilias* to the person doing the injury. Inst. lib. 4, tit. 5, §§ 1, 2; 1 Dom. Civ. Law, pt. 1, lib. 2, tit. 8, § 1; Dig. lib. 9, tit. 2, § 1. Viewing this as a question, not of authority, but to be determined by the application to these facts of settled principles of law, upon what principle can the defendant be held responsible for this injury? He did not himself do the act which caused the injury to the plaintiff. It was not done by one acting by his command or request. It was not done by one whom he had the right to command, over whose conduct he had the efficient control, whose operations he might direct, whose negligence he might restrain. It was not an act done for the benefit of the defendant, and from the doing of which an implied obligation for compensation would arise. It was not an act done in the occupation of land by the defendant, or upon land to which, upon the facts, he had any title. To say that a man shall be liable for injuries resulting from acts done *near* to his land is to establish a rule as uncertain and indefinite as it is manifestly unjust. It is to make him liable for that which he cannot forbid, prevent, or remove.

The case cannot stand on the relation of master and servant.   It cannot stand upon the ground of nuisance erected by the owner of land, or by his license, to the injury of another.    It cannot stand upon the ground of an act done in the execution of a work under the public authority, as the construction of a railroad or canal, and from the responsibility for the careful and just execution of which public policy will not permit the corporation to escape by delegating their power to others.   It can only stand where *Bush* v. *Steinman*, when carefully examined, stands,— upon the general proposition that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do, to adopt which would be to ignore all limitations of legal responsibility."

See, also, *Moore* v. *Sanborne*, 2 Mich. 519 (59 Am. Dec. 209).

The important consideration in such cases is whether the act is one directed by the superior.   If it is done by one whose work is supervised or controlled by the superior, there may be a liability; but where the person whose negligence has caused the injury has contracted only for results, and is independent and free from direction or restraint in the performance of his obligation, the superior is not liable, in a case like the present.

The court was not in error, and the judgment is affirmed.

The other Justices concurred.